Filed 2/8/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CLAYTON DOUGLASS, | B277574 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC596779) |
| v. | |
| SERENIVISION, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Michael P. Linfield, Judge. Affirmed.

Hochfelsen & Kani and Steven I. Hochfelsen for Plaintiff and Appellant.

Phillips, Spallas & Angstadt and Michael R. Halvorsen for Defendant and Respondent.

\* \* \* \* \* \*

There is a "strong presumption that courts should determine the jurisdiction of arbitrators." (*Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 249 (*Sandquist*).) Parties may nevertheless agree to let an arbitrator decide his or her own jurisdiction, at least if their agreement to do so is "'clear[] and unmistakabl[e].'" (*Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 83 (*Howsam*).) Does a party clearly and unmistakably consent to have an arbitrator decide his own jurisdiction when that party does not object to the arbitrator's jurisdiction in its answer to the arbitration petition, informs the arbitrator that it is "voluntarily" "submit[ing]" to the arbitrator's jurisdiction, appears at multiple prehearing conferences, formally asks the arbitrator to impose a bond requirement on the opposing party, and only after the arbitrator denies that request tells the arbitrator that its submission to jurisdiction was conditional on obtaining that bond? On these facts, we conclude that such conduct does constitute clear and unmistakable consent to allow the arbitrator to decide the issue of his own jurisdiction. We further conclude that the party's challenge to the arbitrator's jurisdiction is untimely and that his challenges to the arbitrator's assessment of his jurisdiction and to the ultimate arbitration award are without merit. Accordingly, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

I.  **Facts**

A.  *The Contract*

On August 19, 2009, Vivera, a company that sold diet pills and other health and beauty products online, signed an Adverting Insertion Order (Insertion Order) with Pinnacle Dream Media, a company that offered "internet advertising services."

2

The Insertion Order "incorporate[d] as though fully set forth herein" a Master Advertiser Agreement (Master Agreement) and provided a weblink to access the Master Agreement; a hard copy of the Master Agreement was not attached. The Master Agreement is a more comprehensive document designed to "govern the placement and delivery of advertising" set forth in Insertion Orders. Among other things, the Master Agreement provided that (1) "the Parties consent to have all disputes regarding this agreement resolved by binding arbitration," and that any "prevailing party in any Arbitration shall be entitled to an award of attorney fees and costs for such arbitration," and (2) "[a]ll payments are personally guaranteed by the individual executing the [Insertion Order] or secured by the assets of [Pinnacle Dream Media's customer]."

The Insertion Order was "Accepted" by Vivera and bears the printed name and signature of plaintiff Clayton Douglass (Douglass).

By April 2011, Vivera had an unpaid balance with Pinnacle Dream Media totaling $816,530.

B.    *The Arbitration Proceedings*

In March 2014, defendant Serenivision, Inc. (Serenivision) filed a demand for arbitration against Vivera and Douglass seeking damages of $816,530 plus late penalties and interest. Serenivision had been doing business as Pinnacle Dream Media.

In April 2014, Douglass filed an answer in response to the demand. In his answer, Douglass admitted that he had signed the Insertion Order "as Vivera's representative," but denied any liability for Vivera's debt because he had "refused to" sign the Master Agreement and thus never "agree[d] to personally guarantee any amounts owed . . . by Vivera." He also alleged

3

that Vivera's products were "fraudulent," thereby rendering the Insertion Order unenforceable because its subject matter was unlawful.

In September 2014, Douglass appeared at a preliminary hearing before the arbitrator, at which time he reaffirmed he was "appear[ing] voluntarily and submit[ting] to the jurisdiction of this Arbitrator."

In early November 2014, Douglass wrote a letter to Serenivision's counsel. In that letter, Douglass explained that he was "voluntarily" appearing in the arbitration because he was "trying to avoid the additional time and expense" of litigating the same matter in "a federal lawsuit." Douglass then stated that he would "decline to participate in the arbitration" if Serenivision did not agree to post a bond to cover the costs of attorney's fees Douglass might collect, under the terms of the Master Agreement, as the prevailing party in the arbitration.

On February 18, 2015, just 19 days before the matter was set for an evidentiary hearing before the arbitrator, Douglass wrote a letter to the arbitrator: (1) relaying his prior statements to Serenivision that he would voluntarily participate in the arbitration only if Serenivision posted a bond; (2) informing the arbitrator that Serenivision had refused to post a bond; and (3) stating that "[a] bond is necessary for this action to proceed or for this tribunal to exercise jurisdiction." The arbitrator construed the letter as an expedited request for an order requiring Serenivision to post a bond, and denied that motion a week later.

On March 2, 2015, Douglass wrote the arbitrator a letter "terminat[ing] his voluntary appearance" before the arbitrator. Douglass explained that he had been "willing to participate in

4

this arbitration" because it would be "more cost-efficient" than litigating "before a court"; indicated that his "voluntary appearance" had been "conditioned . . . on the posting of a bond by [Serenivision]"; and declared that he would "no longer" participate because the arbitrator had not required a bond to be posted. Douglass proclaimed he would make no further appearances in the arbitration proceedings.

True to his word, Douglass did not appear at the evidentiary hearing a week later. The arbitrator allowed Serenivision to present its case, and Serenivision called witnesses and introduced documentary evidence.

On May 22, 2015, the arbitrator issued a written order. The arbitrator ruled that Douglass had consented to having the arbitrator decide the question of his own jurisdiction by participating in the arbitration proceeding for months as a way "to avoid defending a federal court lawsuit"; that the arbitrator had jurisdiction over Serenivision's claim because Douglass signed the Insertion Order, which incorporated the Master Agreement (and its arbitration clause) by reference; and that Douglass, under the terms of the Master Agreement, was liable as the guarantor of Vivera's debt to Serenivision, which with penalties, interest, attorney's fees, and costs came to a total of $1,755,050.34, with additional interest accruing at a rate of 10 percent as of March 10, 2015.

Douglass's counsel was served with this order on May 30, 2015.

5

## II.    Procedural Background

On October 2, 2015, 125 days after he was served with the arbitrator's order, Douglass filed a lawsuit against Serenivision (1) to vacate the arbitration award, (2) for declaratory relief, and (3) for $1 million in compensatory damages and for punitive damages on the ground that the Insertion Order and Master Agreement were illegal and hence subject to rescission.

On January 5, 2016, and again on April 7, 2016, Serenivision filed a petition to confirm the arbitrator's award.

Douglass filed a response to Serenivision's first petition on February 2, 2016.  Contrary to what he pled in his answer to the arbitration demand, Douglass in his response claimed that (1) he never signed the Insertion Order, and offered testimony from a handwriting expert that the signature on the Insertion Order was not his; (2) he had no interest in Vivera whatsoever and just had a "partial interest in a company that processed payments to Vivera"; and (3) he had told the arbitrator from the outset that his participation in the arbitration was conditioned on Serenivision posting a bond.

In a 17-page minute order, the trial court granted Serenivision's petition to confirm the arbitration award and denied Douglass's competing claim to vacate it.[1]  As an initial matter, the court ruled that Douglass's petition was untimely because it was filed more than 100 days after he was served with the arbitration award, but agreed to address Douglass's challenge to the arbitrator's jurisdiction in light of language contained in *National Union Fire Ins. Co. v. Stites Prof. Law Corp.* (1991) 235 Cal.App.3d 1718, 1723-1724 (*National Union*) stating that

---

[1]     The court denied as moot Serenivision's demurrer to Douglass's complaint.

6

"[s]ubject matter jurisdiction, in this case meaning the arbitrators' authority or power to adjudicate a certain type of fee dispute, cannot be conferred by consent, waiver, or estoppel." The court then found that Douglass had "agreed to have the arbitrator decide the jurisdiction question" because he "expressed a willingness to participate in [the] arbitration" and "only attempted to withdraw months later" when "the arbitrator ruled against imposing a bond." "Simply put," the court reasoned, "one cannot agree to arbitration, with the proviso that the arbitrator rule in your favor on certain preliminary issues." The court went on to conclude that the arbitrator had jurisdiction over the dispute and that the arbitrator's finding that Douglass was liable for Vivera's debt was not in excess of the arbitrator's powers.

Douglass filed this timely appeal.

## DISCUSSION

Douglass argues that the trial court erred in confirming the arbitrator's award. Serenivision asserts that we need not reach Douglass's challenge because his challenge to the award was untimely. We address the timeliness issue first.

## I.     Timeliness of Douglass's Challenge

"Any party to an arbitration in which an award has been made may petition the court to . . . vacate [the arbitrator's] award" (Code Civ. Proc., § 1285),[2] but any such petition must "be served and filed not later than 100 days after" that party was served with a signed copy of the award (*id*., § 1288). Douglass did not file his petition to vacate until October 2, 2015, which is 125 days after he was served with the award on May 30, 2015. His petition was untimely.

---

[2]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

7

Douglass raises three arguments in response, none of which has merit.

First, he asserts that he was not properly served with the arbitrator's award on May 30, 2015. However, this assertion is directly contrary to the allegation in his petition that "the signed award was served on counsel for [Douglass] on May 30, 2015." This allegation is a "judicial admission" that Douglass "may not . . . contradict[]." (*Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 456.)

Second, Douglass contends he should be able to challenge the arbitrator's award because he asked the trial court to vacate the arbitrator's award in his timely response to Serenivision's first petition to confirm. To be sure, "[a] response to a petition" to confirm an award "may request the court to . . . vacate the award" (§ 1285.2), but a response containing such a request is only timely if it is "served and filed not later than 100 days" after the responding party was served with a signed copy of the award (§ 1288.2). (Accord, *Eternity Investments, Inc. v. Brown* (2007) 151 Cal.App.4th 739, 745 ["'If [the party who lost in the arbitration does] not serve and file a petition to vacate *or a response to [a] petition to confirm* within the 100-day period from the date of service of the award . . . , the award must be treated as final'" (italics added)], quoting *Klubnikin v. California Fair Plan Assn.* (1978) 84 Cal.App.3d 393, 398.) If the rule were otherwise, a party who missed the initial 100-day deadline would be able to resurrect any otherwise time barred challenge by filing a timely response to a petition to confirm. Because a party has four years to file a petition to confirm an arbitration award (§ 1288), accepting Douglass's argument would effectively turn the statute's 100-day deadline into a 1,560-day deadline (that is,

8

four years plus 100 days).  As our Supreme Court has said time and again, "[i]t is not for us to rewrite  . . . statute[s]."  (*J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 657, fn. 7.)

Lastly, Douglass argues that he is challenging the arbitrator's jurisdiction and such a jurisdictional challenge may be raised at any time, including for the first time on appeal.  For support, he—like the trial court—cites the following language from *National Union*:  "Subject matter jurisdiction, in this case meaning the arbitrators' authority or power to adjudicate a certain type of fee dispute, cannot be conferred by consent, waiver, or estoppel."  (*National Union*, *supra*, 235 Cal.App.3d at pp. 1723-1724.)

Of course, parties may not confer subject matter jurisdiction *upon a court* by consent, waiver, or estoppel because our jurisdiction is defined by our Constitution or our Legislature, not by litigants.  (*People v. Chadd* (1981) 28 Cal.3d 739, 757 ["'the power of the courts to proceed'—i.e., their jurisdiction over the subject matter—cannot be conferred by the mere act of a litigant, whether it amounts to consent, waiver, or estoppel"]; *People v. Tindall* (2000) 24 Cal.4th 767, 776, fn. 6 [same].)  By contrast, and as discussed more fully below, the subject matter jurisdiction *of an arbitrator* is purely a product of contract (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 943 (*First Options*) ["arbitration is simply a matter of contract"]), which by definition turns on the parties' mutual *consent* (*Moncharsh v. Heily & Blase* (1992) 3  Cal.4th 1, 8 (*Moncharsh*)).  To say that an arbitrator's subject matter jurisdiction "cannot be conferred by consent" is accordingly incorrect.  (Accord, *Hydrothermal Energy Corp. v. Fort Bidwell Indian Community Council* (1985) 170 Cal.App.3d

9

489, 497 ["'unlike a court of law, an arbitrator may herein decide any issue which the parties willingly present to it'"].) *National Union*'s language makes sense when it is read in context, as *National Union* was addressing the scope of an arbitrator's jurisdiction fixed by a statute (there, Business and Professions Code section 6200 et seq.) (*National Union, supra*, 235 Cal.App.3d at p. 1722); but to the extent that language is read out of context to say that an arbitrator's subject matter jurisdiction cannot be enlarged by consent when that jurisdiction is *solely* a matter of contract, we disagree with *National Union*.

For these reasons, Douglass's petition to vacate was untimely.

## II. Propriety of Order Confirming Arbitration Award

Douglass's challenge to the trial court's order confirming the arbitration award entails three analytically distinct questions: (1) did the parties consent to have the arbitrator decide whether the Master Agreement's arbitration clause applies to Serenivision's demand?; (2) if so, did the arbitrator decide that question correctly?; and (3) if so, did the arbitrator exceed his powers in ultimately concluding that Douglass owed Serenivision more than $1.7 million? We will address each issue separately. In so doing, we review the trial court's order de novo and its factual findings for substantial evidence. (*ECC Capital Corp. v. Manatt, Phelps & Phillips, LLP* (2017) 9 Cal.App.5th 885, 900.)

### A. *Was the Arbitrator the Proper Person to Decide Whether the Arbitration Clause Applies to This Dispute?*

Arbitration "is . . . a matter of contract between the parties" (*First Options, supra*, 514 U.S. at p. 943), and, as such, whether particular disputes are subject to arbitration "'is strictly "a matter of [the parties'] consent"'" (*Sandquist, supra*, 1 Cal.5th at

10

p. 252, quoting *Granite Rock Co. v. Teamsters* (2010) 561 U.S. 287, 299).  (Accord, *Moncharsh, supra*, 3 Cal.4th at p. 8 ["In cases involving private arbitration, '[t]he scope of arbitration is . . . a matter of agreement between the parties'"], quoting *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 323.)  The default presumption—and it is a "strong" one—is that "'the parties intend courts, not arbitrators, to decide . . . disputes about "arbitrability,"' e.g., whether there is an enforceable arbitration agreement or whether it applies to the dispute at hand."  (*Sandquist*, at pp. 251-252, quoting *BG Group PLC v. Republic of Argentina* (2014) 572 U.S. ___, ___ [188 L.Ed.2d 220, 228, 134 S.Ct. 1198, 1206]; *Howsam, supra*, 537 U.S. at p. 84.)  However, the parties are free to designate the arbitrator as the one to decide whether a particular dispute is subject to arbitration (*Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 551-552; *Fidelity & Cas. Co. v. Dennis* (1964) 229 Cal.App.2d 541, 543 (*Dennis*)), although they must do so "clearly and unmistakably" if they wish to rebut the default presumption to the contrary (*Howsam*, at pp. 83-84; *First Options*, at p. 944).

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability [itself]), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."  (*First Options*, *supra*, 514 U.S. at p. 944.)  Under California's law of contracts, a contract may be express (that is, either written or oral) or implied in fact (that is, one whose "existence and terms . . . are manifested by conduct").  (Civ. Code, §§ 1619-1621; *Retired Employees Assn. of Orange County, Inc. v. County of Orange* (2011) 52 Cal.4th 1171, 1178.)

11

Applying these principles, parties may expressly agree to arbitrate: (1) in a contract signed before an dispute arises, although they always retain the power to mutually broaden or narrow the scope of their earlier agreement (*Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1437 ["A submission agreement may restrict or broaden the issues contemplated by the arbitration clause"]; *O'Malley v. Petroleum Maintenance Co.* (1957) 48 Cal.2d 107, 110 (*O'Malley*) ["'The powers of an arbitrator are limited and circumscribed by the agreement or stipulation of submission'"]; *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 382 ["the arbitrator's powers may be restricted by the limitation of issues submitted"]); or (2) in a binding stipulation to arbitrate entered into after a dispute has arisen (*Caro v. Smith* (1997) 59 Cal.App.4th 725, 729 (*Caro*) [parties "stipulate[d] to binding arbitration"]; *Hall v. Superior Court* (1993) 18 Cal.App.4th 427, 431 & fn. 1).

Alternatively, and most pertinent here, parties may enter into an implied in fact agreement to arbitrate through their conduct (which may additionally be deemed to estop them from denying such an agreement). (See *Cabrera v. Plager* (1987) 195 Cal.App.3d 606, 613, fn. 8 ["appearance at the arbitration hearing and participation therein without raising any objection to the jurisdiction of the arbitrator estops them from challenging it afterwards"].) On the one hand, consent to arbitration (or to the arbitrator's power to decide arbitrability) will not be inferred solely from a party's conduct of appearing in the arbitral forum to object to the arbitrator's exercise of jurisdiction, at least if the party makes that objection "prior to participat[ing]" in the arbitration. (*International Film Investors v. Arbitration Tribunal of Directors Guild* (1984) 152 Cal.App.3d 699, 706 (*International*

12

*Film*)); *First Options, supra*, 514 U.S. at p. 946 [written objection; no consent]; *Keller Construction Co. v. Kashani* (1990) 220 Cal.App.3d 222, 225, fn. 2 ["merely appear[ing] [to] articulate[] . . . objection to arbitration"; no consent]; *George Day Const. v. United Broth. of Carpenters* (9th Cir. 1984) 722 F.2d 1471, 1475 [if a party "reserve[s] the question of arbitrability for initial determination in a judicial forum"; no consent].) On the other hand, consent to arbitration (or to the arbitrator's power to decide arbitrability) will be inferred from a party's conduct of litigating an issue up to the point of submitting it for decision in the arbitral forum, at least if the party does so without objection. (*Dennis, supra*, 229 Cal.App.2d at p. 544 [party "twice submitted on [the] merits"]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 790 [party "participated in the arbitration without objection"]; *George Day Const.*, at p. 1475 [when "the arbitrability issue is argued along with the merits, and . . . submitted to the arbitrator for decision, it becomes readily apparent that the parties have consented to allow the arbitrator to decide the entire controversy, including the question of arbitrability"]; *Cabrera*, at p. 613, fn. 8.)

Whether a party's conduct constitutes consent is necessarily fact specific, and this case presents the question: Has a party clearly and unequivocally consented to have an arbitrator decide whether a dispute is subject to arbitration when that party: (1) files an answer that does not object to the arbitrator's power to decide that issue; (2) tells the arbitrator that he is "voluntarily" "submit[ting]" to the arbitral forum to avoid the higher cost of litigating issues in federal court; (3) appears, again without objection, at multiple prehearing conferences; (4) formally asks the arbitrator to impose a bond on the opposing

13

party; and (5) only after the arbitrator refuses to require a bond, and on the eve of the evidentiary hearing, purports to rescind his voluntary participation on the ground that a bond was a condition precedent to his participation?  We conclude that the answer is "yes," and do so for three reasons.

First, Douglass's conduct establishes, under the above-cited precedent, his consent to have the arbitrator decide which disputes are arbitrable.  Although Douglass did not litigate in the arbitral forum to the point of submitting the issue to the arbitrator, he willingly and without objection participated in the arbitration proceedings for over 10 months (from April 2014 when he filed his answer to March 2015 when he withdrew from the arbitration proceedings); he availed himself of the arbitrator's authority when he asked the arbitrator to issue an order requiring Serenivision to post a bond; and he purported to rescind his voluntarily participation a few weeks before the evidentiary hearing and only after the arbitrator issued a ruling he did not like.  What is more, Douglass's participation in the arbitration was no accident.  As he told both the arbitrator and Serenivision, he was making a conscious and tactical decision to participate in the arbitration forum because it was cheaper.  We also note that he was seeking to avail himself of the attorney's fees award only available in the arbitral forum; indeed, he was seeking a bond specifically in anticipation of such an award.  This extent of voluntarily participation in an arbitration where one of the primary issues is whether the dispute was arbitrable, without any objection or reservation and done for tactical reasons, constitutes clear and unmistakable evidence of Douglass's consent to have the arbitrator decide that issue.  (Accord, *International Film*, *supra*, 152 Cal.App.3d at p. 706 [objection

14

"prior to participation" required].)  Because we may infer Serenivision's consent to have the arbitrator decide this issue from the fact that it filed an arbitration demand, there was mutual consent.

Second, allowing Douglass to back out of the arbitral forum on the proverbial eve of the evidentiary hearing runs afoul of the principle that "[a] claimant may not voluntarily submit his claim to arbitration, await the outcome, and if the decision is unfavorable, challenge the authority of the arbitrator to act." (*University of San Francisco Faculty Assn. v. University of San Francisco* (1983) 142 Cal.App.3d 942, 954; see also *O'Malley, supra*, 48 Cal.2d at p. 110 [a party "may not agree to arbitrate a question and then, if the decision goes against it, litigate the question in another proceeding"].)  Such conduct constitutes "'gamesmanship'" insofar as it allows a party "'both to have his cake and eat it too.'"  (*Caro, supra,* 59 Cal.App.4th at p. 731; *Sy First Family Ltd. Partnership v. Cheung* (1999) 70 Cal.App.4th 1334, 1343.)  Courts are disinclined, and rightly so, to reward such "inequitable" conduct.  (*Caro*, at p. 731.)

Third, our conclusion that Douglass's conduct in this case qualifies as consent affirms that the test for waiving resolution of an issue in a judicial forum by conduct fits where it should in the hierarchy of tests used to evaluate waiver of other fora through one's conduct.  By their conduct, litigants can waive their right to litigate in an arbitral forum (*Christensen v. Dewor Developments* (1983) 33 Cal.3d 778, 781-782 (*Christensen*); *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1204 (*St. Agnes*)), and can waive their right to litigate in a particular judicial forum (by waiving their right to object to personal

15

jurisdiction) (*Air Machine Com SRL v. Superior Court* (2010) 186 Cal.App.4th 414, 419 (*Air Machine*)).

However, the tests for waiver by conduct in these different contexts vary in their stringency, and do so for policy reasons. The test for assessing whether a party, through her conduct in litigating in a judicial forum, has thereby waived her right to litigate an in arbitral forum is the most stringent, and the onerousness of this test implements the ""strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.""" (*St. Agnes*, *supra*, 31 Cal.4th at p. 1204.) The test for assessing whether a party, through his conduct in litigating an in arbitral forum, has thereby waived his right to litigate in a judicial forum is less onerous because the "strong public policy" favoring arbitration is not militating against a finding of waiver. And the test for assessing whether a party, through its conduct in litigating in one judicial forum, has thereby waived its right to object to that forum on personal jurisdiction grounds is the least onerous. Indeed, the simple act of filing an answer constitutes a waiver (*Air Machine*, *supra*, 186 Cal.App.4th at pp. 419-420; *Goodwine v. Superior Court* (1965) 63 Cal.2d 481, 484; § 1014), undoubtedly because the type of forum (i.e., judicial) is not changing.

Were we to conclude that Douglass's conduct did not constitute a waiver of his right to a judicial forum, we would effectively make the test for such waivers more stringent than the test for waiver of the right to an arbitral forum because Douglass's conduct, as explained next, constitutes a waiver under that more stringent test. Although "there is no 'single test' for establishing waiver" of one's right to arbitrate (*Christensen*, *supra*, 33 Cal.3d at p. 782), relevant factors include whether:

16

(1) "'"the party's actions are inconsistent with the right to arbitrate" because he "'""substantially invoked"""" "'""the litigation machinery"""" of a court (such as by filing a cross-claim without asking for a stay or seeking discovery not available in the arbitral forum), particularly if the parties "'""were well into preparation of a lawsuit' before [he] notified the opposing party of an intent to arbitrate"""; (2) the party "'"has unreasonably delayed" in seeking arbitration"' (that is, whether the party waited until "'"close to the trial date"""" to assert his right to arbitrate), especially if that delay "'""affected, misled, or prejudiced' the opposing party"""; and (3) the party has acted in 'bad faith' or with 'willful misconduct.'" (*St. Agnes, supra,* 31 Cal.4th at p. 1196; *Christensen,* at p. 782.) Under this precedent, the filing of a lawsuit or the "'mere participation in litigation"' is not enough to effect a waiver; some "'"judicial *litigation* of the merits"""" is required. (*Christensen,* at pp. 782-783; *St. Agnes,* at p. 1203.)

Douglass's conduct constitutes a waiver under this test because he substantially invoked the machinery of the arbitral forum in asking the arbitrator for relief, delayed until the eve of the evidentiary hearing his proclamation that his voluntary participation was conditional, and purposefully availed himself of the cheaper arbitral forum until the arbitrator made a ruling he did not like. Were we nevertheless to conclude that Douglass's conduct did not constitute a waiver of his right to a judicial forum, we would make the test for waiving a judicial forum more onerous than the test for waiving an arbitral forum, and would consequently upset the carefully crafted, policy-based hierarchy for evaluating when one's conduct waives the right to litigate in a particular forum.

Douglass offers three arguments in response.

17

First, he asserts that the never signed the Master Agreement, that the Master Agreement was never incorporated by reference into the Insertion Order, and that he never signed the Insertion Order. Even if we accept these assertions as true, they are irrelevant to our conclusion that Douglass has, by virtue of his subsequent conduct before the arbitrator *alone*, consented to having the arbitrator decide the issue of arbitrability.

Second, Douglass argues that his consent to having the arbitrator decide the question of arbitrability was conditioned on Serenivision posting a bond, and this condition was never met. To be sure, parties may make their promises conditional on the occurrence of a condition precedent (Civ. Code, § 1439; *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 592), including their consent to arbitration (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 313-314 [right to arbitration may be made conditional on a timely demand]). But here, Douglass did not inform Serenivision in writing that his participation was conditional until seven months after unconditionally answering the arbitration demand, and did not inform the arbitrator in writing until a few weeks before the evidentiary hearing. Douglass contests this timeline. Directing us to his attorney's later-filed declaration, Douglass says he gave the arbitrator oral notice at a status conference (held five months after he unconditionally answered) that his participation was going to be conditional, but the arbitrator's contemporaneous minutes from that conference reflect that Douglass was "appear[ing] voluntarily and submit[ting] to the jurisdiction of this Arbitrator"; no conditions or qualifications were reported. The trial court was well within its rights to reject a self-serving subsequent declaration in favor of the arbitrator's

18

contemporaneous record.  If we accept the trial court's factual findings (as we must where, as here, they are supported by substantial evidence), Douglass's notice of the conditional nature of his participation did not occur until his conduct had already established his unconditional consent to have the arbitrator decide the question of arbitrability.  Douglass's belated attempt to retroactively impose a condition at that point in time was too little, too late.

Lastly, Douglass contends that he sufficiently preserved his objection to the arbitrator's power to decide the question of arbitrability because he registered objections to his participation from the outset.  As noted above, a party's participation in an arbitral forum does not constitute a waiver if it is preceded by an objection.  (*International Film*, *supra*, 152 Cal.App.3d at p. 706); *First Options*, *supra*, 514 U.S. at p. 946.)  In this case, however, there was no timely objection.  Douglass raised no objection in his answer and, months later, reaffirmed he was "appear[ing] voluntarily and submit[ting] to the jurisdiction of this Arbitrator."  Although Douglass now takes the position, in the declarations he and his counsel submit, that he had objected from the beginning, the trial court had ample basis to find those declarations not to be credible:  Those declarations contradict the arbitrator's contemporaneous order indicating Douglass's participation was unconditional, and the declarations contain other statements (such as Douglass's denial that he ever signed the Insertion Order and his disclaimer of any relationship to Vivera) that directly conflict with other contemporaneous evidence (such as Douglass's admission, in his answer, that he signed the Insertion Order on behalf of Vivera).  (E.g., *People v. Lenix* (2008) 44 Cal.4th 602, 614 ["'determinations of credibility

19

and demeanor lie "'peculiarly within a trial judge's province'"'"].) We would make the same credibility call as the trial court.

In sum, the arbitrator had the power to decide whether the disputes before him were subject to arbitration.

**B.** ***Did the Arbitrator Err in Concluding That This Dispute is Subject to Arbitration?***

Where, as here, the parties have agreed to have the arbitrator decide whether their dispute is subject to arbitration, "the court's standard for reviewing the arbitrator's decision about that matter should not differ from the standard courts apply when they review any other matter that the parties have agreed to arbitrate." (*First Options*, *supra*, 514 U.S. at p. 943, italics omitted.) As a "general rule," courts "cannot . . . review[]" "an arbitrator's decision . . . for errors of fact or law." (*Moncharsh*, *supra*, 3 Cal.4th at p. 11; § 1286.2, subd. (a); 9 U.S.C. § 10.) This "'extremely narrow'" standard of review means that we must "accord 'substantial deference to the arbitrator['s] own assessment[] of [his] contractual authority.'" (*Ajida Technologies, Inc. v. Roos Instruments, Inc.* (2001) 87 Cal.App.4th 534, 541.)

We conclude that the arbitrator did not exceed his powers in determining that the arbitration clause in the Master Agreement reaches this dispute. That clause makes "*all* disputes regarding" the Master Agreement subject to "binding arbitration." The Master Agreement, including the arbitration clause, is incorporated by reference into the Insertion Order. One contract may incorporate the terms of another (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 66), and an incorporation is valid as long as "(1) the reference is clear and unequivocal, (2) the reference is called to the attention of the other party and he consents thereto, and (3) the terms of the incorporated document are known or easily available to the

20

contracting parties" (*DVD Copy Control Assn., Inc. v. Kaleidescape, Inc.* (2009) 176 Cal.App.4th 697, 713). Here, the one-page Insertion Order stated that it was "incorporat[ing]" "fully" the Master Agreement in a prominent location and font and provided the exact web address to access the Master Agreement. Douglass admitted that he signed the Insertion Order on behalf of Vivera under the word, "Accepted." Because this dispute involves the collection of an unpaid balance incurred pursuant to the Insertion Order, it falls squarely within the terms of the arbitration clause incorporated into the Insertion Order.

Douglass's various arguments to the contrary lack merit. He argued to the arbitrator that he never signed the Master Agreement (and argued to the trial court that he refused to sign the Master Agreement), but his signature on the Master Agreement is unnecessary to incorporate its terms because he signed and thereby affirmatively "accepted" the terms of the Insertion Order, which expressly incorporated the Master Agreement's provisions. Douglass argued to *the trial court* that he never signed the Insertion Order and never received a copy of the Master Agreement. Of course, *the arbitrator* could not have erred in not considering an argument never presented to him. Moreover, these arguments either directly contradict what Douglass told the arbitrator (namely, that he *did* sign the Insertion Order)[3] or directly contradict evidence Serenivision submitted authenticating the version of the Master Agreement available at their website at the time the Insertion Order was

---

[3]  This admission renders irrelevant Douglass's challenge to the admissibility of additional evidence that he was the signatory to the Insertion Order.

21

signed. The trial court was well within its province to resolve these factual disputes in favor of the arbitrator's decision.

### C. *Did the Arbitrator Err in Concluding That Douglass was Liable as a Guarantor for Vivera's Unpaid Balance on the Insertion Order?*

The only pertinent basis for overturning the arbitrator's award in this case is that the arbitrator "exceeded [his] powers." (§ 1286.2, subd. (a)(4).) It is well settled, however, that an arbitrator does "not exceed [his] powers merely by erroneously deciding a contested issue of law or fact." (*Advanced Micro Devices, Inc. v. Intel Corp., supra*, 9 Cal.4th at p. 366.)

The arbitrator did not commit any errors of law or fact, let alone exceed his powers. As discussed above, the terms of the Master Agreement were incorporated into the Insertion Order. The Master Agreement provides that "[a]ll payments are personally guaranteed by the individual executing the" Insertion Order. Because Douglass admitted that he signed the Insertion Order and thereby accepted its terms, he "executed" that Order and is contractually bound as a guarantor of Vivera's outstanding debt. (See *Transdyn/Cresci JV v. City and County of San Francisco* (1999) 72 Cal.App.4th 746, 757-758 [signature and execution synonymous].) Douglass's acts, coupled with the pertinent contractual terms, take him outside of the default rule that "'a guarantor who is not a signatory to a contract containing an arbitration clause is not bound by the arbitration clause.'" (*Grundstad v. Ritt* (7th Cir. 1997) 106 F.3d 201, 204.) Douglass has not challenged the arbitrator's findings that Vivera is liable to Serenivision or the arbitrator's calculation of the amount due. Consequently, we have no basis to disturb the arbitrator's order holding Douglass liable to Serenivision for Vivera's debt.

22

**DISPOSITION**

The judgment is affirmed.  Serenivision is entitled to its costs on appeal.

**CERTIFIED FOR PUBLICATION.**


_____, J.
HOFFSTADT

We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

23