Filed 5/16/23  Mikail v. Benyamini CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| RAMIN MIKAIL,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RAMIN BENYAMINI, et al.,<br><br>    Defendants and Appellants. | B316525 (consolidated with B320567)<br><br>(Los Angeles County Super. Ct. No. 21STCP02159) |


        APPEALS from a judgment and a postjudgment order of the Superior Court of the County of Los Angeles, Steven J. Kleifield, Judge.  Affirmed.
        Krane & Smith, Marc Smith and Kathleen Dority Fuster, for Defendants and Appellants.
        Valle Makoff, Jeffery B. Valle and Julie Roback, for Plaintiff and Respondent.

# I. INTRODUCTION

The trial court confirmed and entered judgment on an arbitration award in favor of plaintiff Ramin Mikail and against appellant defendants.[1]  On appeal, defendants challenge the judgment's award of attorney fees and a postjudgment charging order.  We affirm.

# II. PROCEDURAL BACKGROUND

## A. *Shareholders' Agreement/Arbitration Clause*

In December 2012, Color OnDemand, Inc. entered into a shareholders' agreement with plaintiff, defendants, and the codefendant.  The agreement set forth the parties' respective ownership of the issued shares of the corporation and included an arbitration clause.  Specifically, paragraph 11.8, entitled "Dispute Resolution, Attorney Fees and Costs" (arbitration clause), provided that the parties were required to submit any disputes arising from the agreement to binding contractual arbitration administered by JAMS.

The arbitration clause included an attorney fees provision that stated:  "The arbitrator may, in the Award, allocate all or part of the costs of the arbitration, including the fees of the arbitrator and the reasonable out-of-pocket attorneys' fees of the prevailing party."  The clause further provided that its terms could be enforced in the trial court and that "the party seeking

---

[1]     Defendants are Ramin Benyamini and Askhan Motamen. Their codefendant, Arsalan Motamen (the codefendant), prevailed in the arbitration and is not a party to this appeal.

enforcement" would be entitled to "an award of all costs, fees and expenses, including attorney's fees," to be paid by the party against whom enforcement was ordered.

B.     *Interim Arbitration Award*

In May 2020, plaintiff initiated a JAMS arbitration against defendants and the codefendant for breach of fiduciary duty, breach of the shareholder agreement, conversion, intentional infliction of emotional distress, unjust enrichment, and an accounting.  Following a six-day hearing in February 2021, plaintiff submitted a proposed interim award which provided, among other things, that he was entitled to recover from defendants damages in the amount of $110,837.50.  The proposed award also provided that defendants were "to pay [plaintiff's] costs, including costs of the Arbitrator and court reporter fees, and reasonable attorneys fees."

Defendants filed objections to the proposed award, submitted supplemental briefing on the form of the proposed award, and their own proposed interim award which provided, among other things, that plaintiff was entitled to "reasonable attorneys' fees incurred."  Defendants did not, however, argue that defendants were limited to recovery of fees paid out-of-pocket.

On March 2, 2021, and March 19, 2021, the arbitrator held hearings on the proposed order and subsequently issued a ruling on the contested language, none of which involved the out-of-pocket language in the fee provision.  Plaintiff then submitted an amended proposed interim award, which the arbitrator signed on March 26, 2021.  The interim award provided that plaintiff and

3

the codefendant were each entitled to recover "reasonable attorneys fees" and directed the parties to submit evidence in support of their requests for fees.

C.     *Attorney Fees Applications and Final Award*

On April 5, 2021, plaintiff filed a motion to set the amount of attorney fees and costs, arguing, among other things, that his reasonable attorney fees should be calculated using the lodestar method—the reasonable number of hours expended, multiplied by the reasonable hourly rate prevailing in the legal community. In his supporting declaration, plaintiff's counsel explained that his firm had agreed to represent plaintiff on a hybrid reduced-rate/contingency basis under which plaintiff would be billed at a rate 50 percent below the firm's usual rates and the firm would take 20 percent of the amount recovered on plaintiff's behalf. Using the lodestar method and his firm's usual rates, counsel calculated that his firm billed 1,476.5 hours on the arbitration for a total amount of fees incurred of $639,119.00.

On April 20, 2021, defendants filed their opposition to plaintiff's fee motion, conceding that the lodestar was the traditional method for evaluating a fee application and arguing that:  plaintiff's requested fees were unreasonable because they were double the amount plaintiff was actually billed; the fees were disproportionate to the result obtained; plaintiff had unnecessarily complicated the litigation, resulting in unnecessary fees; and, based on plaintiff's reduced-rate agreement with his counsel, a reasonable fee request would be no more than $320,000, the approximate amount of fees that plaintiff actually incurred.  Defendants did not suggest, however, that plaintiff's

4

fees should be limited to the amount he actually paid out-of-pocket.

On April 20, 2021, after reviewing the parties briefing on the fee applications, the arbitrator issued a minute order awarding plaintiff the entire amount of fees claimed—$639,119.00—and awarding the codefendant the amount of his request—$52,647.00—as the prevailing party on plaintiff's claims against him.

On April 23, 2021, the arbitrator issued a "Ruling on Objections to Fees Requests," which confirmed that he had reviewed the parties' oppositions and denied all objections to the requests.

On May 17, 2021, the arbitrator confirmed his prior ruling on the fee requests, and defendants then filed further objections regarding the codefendant's fees and the disparity between plaintiff's damage award and his fee award, but did not mention the out-of-pocket limitation on the attorney fees award.

On May 24, 2021, the arbitrator responded to defendants' objections regarding the codefendant's fee award and rejecting all of defendants' other objections to plaintiff's fee award. The next day, the arbitrator issued his final award.

D.    *Objections to Final Award*

On June 1, 2021, defendants, now represented by new counsel, filed objections to the final award, raising for the first time the out-of-pocket limitation on fee awards in the arbitration clause. According to defendants, the arbitrator: misinterpreted the arbitration clause by awarding fees beyond those paid out-of-pocket; exceeded the contractual limitation on fee awards; and

5

exceeded the power granted to him under the arbitration clause in violation of Code of Civil Procedure section 1286.2.[2]  In addition, defendants maintained that there was no evidence of the amounts plaintiff paid out-of-pocket, the arbitrator erred by applying the lodestar method and including the 20 percent contingency fee in the award, and the arbitrator failed to allocate between the derivative claims and individual claims, as well as between claims on which defendants prevailed or on which no fees were recoverable.

Plaintiff responded to the objections, arguing that, under both the JAMS rules and the Code of Civil Procedure, the arbitrator had no power to reconsider a final award; defendants had waived their new arguments by failing to raise them before the award became final; and the arbitrator did not exceed his authority under the arbitration clause because his award was based on his interpretation of the out-of-pocket language and that language was, at best, ambiguous.

Defendants filed a reply.

On June 15, 2021, the arbitrator issued a "Final Ruling on Objections to Attorney Fees Award," finding that "[n]othing in [defendants'] submission moves the arbitrator to change his ruling on attorney fees."

E.      *Petition to Confirm Award and Judgment*

On July 15, 2021, plaintiff filed in the trial court a motion to confirm the award pursuant to section 1285 et seq. Defendants opposed the motion, arguing that the award should

---

[2]      All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

be vacated because the arbitrator exceeded his powers in violation of section 1286.2, subdivision (a)(4) and JAMS rule 24(c). Plaintiff filed a reply.

On August 20, 2021, the trial court held a hearing on the motion to confirm the award and granted it. On September 22, 2021, the court entered an amended judgment based on the arbitration award. The judgment included a provision that awarded plaintiff attorney fees incurred in bringing the confirmation motion, with the amounts to be determined on a subsequent fee motion.

## F. *Appeals*

On November 12, 2021, defendants appealed from the amended judgment, case number B316525 (first appeal).[3]

On February 2, 2022, plaintiff filed his request for attorney fees incurred in connection with the confirmation motion, seeking fees in the amount of $31,595.00. Defendants opposed the motion on the grounds that the fees sought were excessive, unreasonable, and not actually incurred. On February 28, 2022, the trial court held a hearing on plaintiff's fee request and granted the request in its entirety.

On March 9, 2022, the trial court entered a second amended judgment which included the amounts of fees and costs

---

[3] As the orders we issued in this appeal are part of the record on appeal, we deny as moot plaintiff's request for judicial notice of those orders. We also deny plaintiff's request for judicial notice of the complaint filed by defendants in a separate action against their prior attorney as the complaint was not filed in the trial court and is unnecessary for our resolution of this appeal.

awarded in connection with the motion to confirm. On May 2, 2022, defendants appealed from the second amended judgment as to attorney fees and costs only (second appeal).

Following the original amended judgment, plaintiff pursued postjudgment collection remedies against defendants, including a motion for a charging order, which the trial court granted on March 10. On May 12, 2022, defendants appealed from the charging order (third appeal).[4]

## III. DISCUSSION

A. *Appeals from Judgment on Arbitration Fee Award*

Defendants contend that the trial court erred by entering judgment on the attorney fees portion of the arbitrator's final award. According to defendants, the court should have vacated the arbitrator's final fee award because: the arbitration clause limited attorney fees to those that plaintiff had already paid; the arbitrator exceeded the jurisdiction granted him under the out-of-pocket limitation in the arbitration clause; and the fee award contravened an explicit legislative expression of public policy.

### 1. Standard of Review and Legal Principles

On review of a trial court's order confirming or vacating an arbitration award, "'[w]e review the trial court's ruling de novo, but defer to the factual and legal findings made by the arbitrator.

---

[4] The second and third appeals were designated as case number B320567. We granted defendants' motion to consolidate those appeals with the first appeal, case number B316525.

[Citations.]  "[W]e do not review the arbitrator's findings . . . , but take them as correct."  [Citation.]'  [Citation.]  To the extent the superior court judge made factual findings that are not inconsistent with the arbitrators' findings, we review them for substantial evidence.  [Citation.]" (*Panoche Energy Center, LLC v. Pacific Gas & Electric Co.* (2016) 1 Cal.App.5th 68, 99.)

"'Because the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration.' (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 10 . . . .)  Generally, courts cannot review arbitration awards for errors of fact or law, even when those errors appear on the face of the award or cause substantial injustice to the parties.  (*Id.* at pp. 6, 28.)" (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916 (*Richey*).)

"The California Arbitration Act (Code Civ. Proc., § 1280 et seq.) and the Federal Arbitration Act (9 U.S.C. § 10 et seq.) provide limited grounds for judicial review of an arbitration award.  Under both statutes, courts are authorized to vacate an award if it was (1) procured by corruption, fraud, or undue means; (2) issued by a corrupt arbitrator; (3) affected by prejudicial misconduct on the part of the arbitrator; or (4) in excess of the arbitrator's powers.  (Code Civ. Proc., § 1286.2, subd. (a); 9 U.S.C. § 10(a).)  An award may be corrected for (1) evident miscalculation or mistake; (2) issuance in excess of the arbitrator's powers; or (3) imperfection in the form.  (Code Civ. Proc., § 1286.6; 9 U.S.C. § 11.)" (*Richey, supra*, 60 Cal.4th at p. 916.)

"Arbitration 'is . . . a matter of contract between the parties' [citation], and, as such, whether particular disputes are subject to arbitration "'is strictly 'a matter of [the parties'] consent'"'" [citations]. [Citations.]" (*Douglass v. Serenivision, Inc.* (2018) 20 Cal.App.5th 376, 386 (*Douglass*).) "'When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability [itself]), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.' [Citation.] Under California's law of contracts, a contract may be express (that is, either written or oral) or implied in fact (that is, one whose 'existence and terms . . . are manifested by conduct'). [Citations.]" (*Id.* at p. 387.)

Thus, in addition to expressly agreeing to arbitrate an issue, "parties may enter into an implied in fact agreement to arbitrate [an issue] through their conduct (which may additionally be deemed to estop them from denying such an agreement). [Citation.] On the one hand, consent to arbitration (or to the arbitrator's power to decide arbitrability) will not be inferred solely from a party's conduct of appearing in the arbitral forum to object to the arbitrator's exercise of jurisdiction, at least if the party makes that objection 'prior to participat[ing]' in the arbitration. [Citations.] On the other hand, consent to arbitration (or to the arbitrator's power to decide arbitrability) will be inferred from a party's conduct of litigating an issue up to the point of submitting it for decision in the arbitral forum, at least if the party does so without objection. [Citations.]" (*Douglass, supra,* 20 Cal.App.5th at pp. 387–388.)

It is well established that a party "'may not voluntarily submit his claim to arbitration, await the outcome, and if the decision is unfavorable, challenge the authority of the arbitrator

10

to act.' [Citations.] Such conduct constitutes "'gamesmanship'" insofar as it allows a party "'both to have his cake and eat it too.'" [Citations.] Courts are disinclined, and rightly so, to reward such 'inequitable' conduct. [Citation.]" (*Douglass, supra*, 20 Cal.App.5th at p. 389.)

### 2. Interpretation of Attorney Fees Provision

Defendants devote the majority of their briefs on appeal to arguing that the arbitrator erred when he interpreted the attorney fees provision of the arbitration clause. We reject defendants' challenges to the arbitrator's interpretation of the arbitration clause because, as we discuss above, an arbitration award cannot be vacated for any such asserted errors of law or fact. (*Richey, supra*, 60 Cal.4th at p. 916.)

### 3. Excess of Jurisdiction

We next consider defendants' contention that the arbitrator exceeded his jurisdiction in awarding attorney fees that were not "out of pocket," that is, fees plaintiff had not yet paid. Even assuming that the arbitrator's award of reasonable attorney fees could be construed as a form of recovery that was not agreed to by the parties, we would still conclude that defendants voluntarily submitted to the arbitrator plaintiff's entitlement to reasonable attorney fees and the amount of such fees. Indeed, at no time prior to entry of the final arbitration award, did defendants contest plaintiff's assertion that the amount of fees should be calculated using the traditional lodestar method, which focused on the amount of fees incurred, rather than on the

11

amount actually paid. Instead, they acquiesced in plaintiff's request that fees be calculated using that method, without objection or proffering an alternative methodology. In addition, once the arbitrator announced his fee ruling, defendants raised multiple challenges to the ruling's proposed language, but did not protest the use of the lodestar methodology or object to the amount of the award based on the out-of-pocket limitation. Accordingly, defendants' conduct, in voluntarily submitting the award of reasonable attorney fees to the arbitrator; acquiescing in his application of the lodestar method to calculate the amount of such fees; and failing to object to his authority to award any amounts beyond those actually paid by plaintiff, constituted an implied-in-fact agreement to allow the arbitrator broad discretion in determining the ultimate amount of the award. Having impliedly consented to the arbitrator's jurisdiction to adjudicate the issue, defendants could not thereafter challenge the award on that ground in the trial court. (See *Fidelity & Casualty Co. v. Dennis* (1964) 229 Cal.App.2d 541, 544.)

Defendants counter that they did not forfeit their challenge to the arbitration award because they challenged the awarding of any fees that were not actually paid in their objections to the final award and in their opposition to the motion to confirm the award in the trial court. We disagree.

"An arbitrator, 'upon written application of a party to the arbitration, may correct the award upon any of the grounds set forth in subdivisions (a) and (c) of [s]ection 1286.6 not later than 30 days after service of a signed copy of the award on the applicant.' (§ 1284.) Thus, 'an arbitrator's "power . . . to correct an award after it has been issued to the parties is limited to evident miscalculations of figures or descriptions of persons,

12

things or property (§ 1286.6, subd. (a)) and nonsubstantive matters of form that do not affect the merits of the controversy. (§ 1286.6, subd. (c).)'" [Citation.]" (*Taska v. The RealReal, Inc.* (2022) 85 Cal.App.5th 1, 8, fn. omitted.)  "An arbitrator may also 'issue an amended or supplemental award if he or she inadvertently omitted a ruling on a submitted issue in the original award.' [Citation.]" (*Ibid.*, fn. 2.)

Here, in their objections to the arbitrator's final award, defendants did not seek to correct a miscalculation of figures or other nonsubstantive matters of form.  Nor were they attempting to obtain a ruling on a submitted issue that had been inadvertently omitted from the final award.  They were instead trying to change the substance of the arbitrator's ruling on the amount of reasonable fee by using a different methodology to calculate the fee award.  Thus, their objections were untimely and could not operate to withdraw their consent to the arbitrator's adjudication of the reasonable fee issue.

4.    Public Policy

Defendants also suggest that the award must be vacated because it falls within the limited public policy exception to the rule of finality.  According to defendants, the final award "contravenes an explicit expression of public policy and conflicts with the statutory scheme" codified in section 1021 and Civil Code section 1717 with respect to attorney fees.

"Arbitrators may exceed their powers by issuing an award that violates a party's unwaivable statutory rights or that contravenes an explicit legislative expression of public policy. [Citations.]  However, "'[a]rbitrators do not ordinarily exceed

13

their contractually created powers simply by reaching an erroneous conclusion on a contested issue of law or fact, and arbitral awards may not ordinarily be vacated because of such error . . . .'" [Citation.]" (*Richey, supra*, 60 Cal.4th [at pp.] 916–917.) "Arbitral finality is the general rule, and the public policy exception permitting courts to vacate an arbitration award arises in only limited and exceptional circumstances. [Citations.]" (*City of Richmond v. Service Employees Internat. Union, Local 1021* (2010) 189 Cal.App.4th 663, 666.)

Defendants' argument is based on the premise that the amount of fees awarded was not authorized by the parties' contract. But, as we discuss above, defendants impliedly consented to the arbitrator's contractual authority to award such amounts. In any event, the arbitrator here calculated the award under the traditional lodestar method, which has been deemed presumably reasonable for use in calculating contractual attorney fees under Civil Code section 1717. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1097; *Glaviano v. Sacramento City Unified School Dist.* (2018) 22 Cal.App.5th 744, 753.) Defendants do not cite to any decision in which an arbitrator's fee award calculated under the lodestar method has been deemed violative of public policy or contrary to a specific statutory scheme. The arbitrator's award therefore did not fall within the limited public policy exception to the rule of finality.

B.    *Appeals from Award of Confirmation Fees and Charging Order*

Defendant's appeal from the trial court's fee award on the confirmation motion appears to be predicated solely on their

14

requested reversal of the arbitrator's underlying fee award. And, defendants concede that their challenge to the charging order is premised on their requested reversal of the underlying fee award. Because we affirm the judgment on the arbitrator's fee award, we also affirm the court's award of fees incurred on the confirmation motion and the charging order.

## IV.   DISPOSITION

The judgment and charging order are affirmed. Plaintiff is awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

RUBIN, P. J.

MOOR, J.

15