Filed 10/27/25  Kasprzak v. Huang CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| ROBERT KASPRZAK, | B332483 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 23STCV09342) |
| v. | |
| CHARLES CHUNHUA HUANG et al., | |
| Defendants and Appellants. | |
| ROBERT KASPRZAK, | B332499 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 23AHCP00291) |
| v. | |
| PASACA CAPITAL, INC., | |
| Defendant and Appellant. | |

APPEALS from orders of the Superior Court of Los Angeles County, William A. Crowfoot, Judge.  Affirmed.

Ellis George, Eric M. George, Christopher T. Berg, and David J. Carroll for Defendants and Appellants.

Wilmer Cutler Pickering Hale and Dorr, Thomas G. Sprankling, Christopher T. Casamassima, and Leah M. Fugere for Plaintiff and Respondent.

_____

## INTRODUCTION

These appeals arise from the trial court's orders denying two motions to compel arbitration under an employment arbitration agreement between appellant Pasaca Capital, Inc. (Pasaca) and respondent Robert Kasprzak, the former chief legal officer of Pasaca.  Kasprzak filed the two underlying actions giving rise to these appeals:  a civil complaint against Pasaca and co-appellant Charles Huang, Pasaca's founder and majority shareholder (the civil action); and a petition for writ of mandate seeking to review Pasaca's books and records pursuant to Corporations Code section 1601 (the books and records action).  The parties are also separately proceeding in an arbitration initiated by Pasaca alleging Kasprzak defrauded the company of over $100 million during his employment.

Pasaca and Huang moved to compel arbitration of Kasprzak's breach of fiduciary duty and unjust enrichment causes of action in the civil action, contending these claims were subject to an arbitration clause covering "any dispute or claim relating to or arising out of [the] employment relationship." Pasaca also moved to compel arbitration of Kasprzak's books and records action, arguing his shareholder status was intertwined

with his employment relationship.  The trial court denied both motions.  It concluded Kasprzak's breach of fiduciary duty and unjust enrichment claims arose from a "co-venture" business relationship predating his formal employment and were therefore not "rooted in" the employment relationship for purposes of the arbitration clause, and his books and records action likewise was rooted in his pre-employment shareholder status.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *Kasprzak, Huang, and Others Form a Business Relationship and Launch a COVID-19 Test Supply Business*

In early 2020, Kasprzak, Huang, and three other individuals (Daniel Elliott, Kening Xu, and Shuning Luo) entered into an informal co-venture, initially envisioned as an international investments enterprise.  When the COVID-19 pandemic began, the co-venture reinvented itself as a COVID-19 test supplier.

The co-venture's activities were ultimately folded into Pasaca, a shell company Huang created in 2016, with Pasaca's share ownership divided among the co-venturers.  Pasaca created a wholly owned subsidiary, Innova Medical Group, Inc. (Innova), to conduct the COVID-19 testing business.  Innova agreed to pay two third-party sales intermediaries, Nano LiquiTec LLC and Disruptive Nanotechnology Ltd., a percentage of the sale price of the COVID-19 tests as commission.  Innova secured contracts with the United Kingdom to provide COVID-19 testing kits, generating approximately $5 billion in sales in approximately a year and a half.

3

Kasprzak signed a subscription agreement, effective March 1, 2020, giving him the right to purchase 750,000 shares of Pasaca. Kasprzak purchased these 750,000 shares for $75,000, or 10 cents per share.

B.    *Kasprzak's Employment Agreement and Termination*

On June 21, 2021, over a year after he purchased his shares, Kasprzak accepted the position of Pasaca's chief legal officer, with his employment made retroactive to October 1, 2020. The two-page employment agreement included an arbitration provision stating, in relevant part: "in the event of any dispute or claim relating to or arising out of our employment relationship, you and the Company agree to an arbitration in which . . . all disputes between you and the Company shall be fully and finally resolved by binding arbitration." The agreement made no reference to stock ownership, Kasprzak's shares, or the subscription agreement.

From 2020 to 2022, Pasaca compensated Kasprzak with a total of: (1) $1,481,012.99 in total pre-tax salary; (2) a $110,000 director's fee; (3) a $15,000,000 director's bonus; (4) dividends in the amount of $60,633,236; and (5) a watch worth $163,705.

In early 2022, Kasprzak and Huang discussed Kasprzak's resignation from Pasaca and agreed Pasaca would repurchase Kasprzak's 750,000 shares for at least $75 million, and further agreed that Kasprzak would resign as an officer and director on a mutually agreed date. They eventually agreed the repurchase and resignation date would be September 30, 2022.

On September 30, 2022, Pasaca instead terminated Kasprzak for alleged employment misconduct (as described

4

below), and contended in the subsequent books and records action that it "voided" his shares in the company at that time.

C.    *Arbitration Proceedings*

In February 2023, Pasaca initiated arbitration proceedings against both Kasprzak and Daniel Elliott, who had served as chief executive officer of Pasaca.[1]  Pasaca alleged Kasprzak and Elliott fraudulently negotiated reduced commission payments to the sales intermediaries, then siphoned the savings to themselves rather than passing them on to Innova or Pasaca.  Pasaca also alleged Kasprzak and Elliott diverted over $106 million through this scheme, by creating a company (Nano Holdings LLC) with a similar name to the two legitimate third-party sales intermediaries (Nano LiquiTec LLC and Disruptive Nanotechnology Ltd.).  Kasprzak, in his capacity as Pasaca's chief legal officer, also had negotiated Elliott's separation terms in 2022, which included Pasaca paying Elliott over $105 million and a release of all claims against Elliott.  Pasaca sought to recover the alleged $106 million in fraudulent commission payments, the $77 million in salary and benefits Kasprzak received, and the $105 million payout to Elliott that Kasprzak negotiated.

In April 2023, Kasprzak responded to Pasaca's claims in arbitration and asserted two indemnification counterclaims.  On the first page of his response, Kasprzak stated he was pursuing litigation against Pasaca and Huang, and that he "provides this Response out of an abundance of caution, does not concede jurisdiction by JAMS, the arbitrability of the claims asserted by

---

[1]    Innova is also a claimant in the arbitration.  For ease of reference, and as relevant here, we refer solely to Pasaca.

5

Claimants or the propriety of this proceeding, and does not waive any defenses to which he may be entitled." Kasprzak's first affirmative defense asserted that Pasaca's claims were "barred to the extent any or all of [its] claims are not subject to arbitration" and "further barred to the extent the employment letter compels arbitration only of claims not asserted" by Pasaca.

D.    *Kasprzak's Civil Action*

In April 2023, on the same day he filed his arbitration response, Kasprzak filed a civil action against Pasaca and Huang, alleging causes of action for:  (1) breach of oral contract; (2) breach of the implied covenant of good faith and fair dealing; (3) promissory estoppel; (4) fraud; (5) breach of fiduciary duty; (6) unjust enrichment; (7) accounting; (8) fraudulent transfer; and (9) defamation.

According to Kasprzak, Huang and Pasaca pretextually terminated him and refused to repurchase his shares based on "false and salacious" allegations.  Kasprzak also alleged Huang's leadership became increasingly erratic, including failed investments based on Huang's belief in his own prophetic ability to see the future.  Kasprzak further alleged Huang engaged in self-dealing, including using Pasaca funds to buy private jets, luxury vehicles, an $18 million house, and designer clothing for himself, his family, and his girlfriends.  Kasprzak also alleged Huang misappropriated Pasaca assets, including transferring $200 million to Hong Kong and Singapore.

E. *Kasprzak's Books and Records Request and Petition for Writ of Mandate*

On May 24, 2023, Kasprzak served a formal demand to inspect Pasaca's books and records pursuant to Corporations Code section 1601, which Pasaca refused. On July 7, 2023, Kasprzak filed a petition for writ of mandate, seeking to compel inspection.

F. *Motions To Compel Arbitration*

On June 6, 2023, Pasaca and Huang moved to compel arbitration of all nine causes of action in Kasprzak's civil complaint and to stay the litigation. Kasprzak ultimately only opposed arbitration of his fifth and sixth causes of action for breach of fiduciary duty and unjust enrichment, respectively (the "co-venture claims"). Kasprzak argued those two claims arose from his role as a co-venturer, which predated and was independent of his employment relationship with Pasaca. Kasprzak agreed to stipulate to arbitration of his other claims, stating he was "willing to assert certain of [his] claims in arbitration if that is what it takes to have a finder of fact" determine those issues, but that the two "remaining claims are not arbitrable" under the employment arbitration clause. Kasprzak also asserted in communication about this stipulation with opposing counsel (attached to his opposition to the motion to compel) that he "continues to dispute the enforceability and applicability of [the] arbitration agreement" overall and did not believe the remaining two claims were even "colorably arbitrable."

On August 10, 2023, one day before the scheduled hearing on Kasprzak's petition for writ of mandate, Pasaca filed a motion

7

to compel arbitration and stay the books and records action. Pasaca argued that Kasprzak's shareholder status was disputed and "bound up in facts and claims related to Kasprzak's employment."

On September 14, 2023, the trial court granted in part, and denied in part, Pasaca and Huang's motion to compel arbitration in the civil action. The court ordered arbitration of the seven causes of action Kasprzak agreed to arbitrate but denied the motion with regard to his causes of action for breach of fiduciary duty and unjust enrichment. The court determined these two claims were "not rooted in the relationship between the parties 'which was created by the [employment] contract'" because they arose from "Kasprzak's undisputed (and independent) role as a co-venturer." The court stayed further proceedings on the co-venture claims until conclusion of the arbitration to avoid inconsistent rulings.

On September 15, 2023, the trial court granted Kasprzak's petition for writ of mandate, denied Pasaca's motion to compel arbitration in the books and records action, and ordered Pasaca to produce the requested books and records within 30 days. As relevant here, the court ruled that Kasprzak had a proper purpose for the inspection relating to ascertaining the value of his stock; Pasaca's evidence that Kasprzak's shares were voided was insufficient and improperly authenticated; and the books and records action did not relate to the parties' employment relationship because it was "rooted in [Kasprzak's] shareholder status, which is governed by the pre-employment Subscription Agreement and not the parties' subsequent employment relationship."

Pasaca timely appealed from the trial court's order denying the petition to compel arbitration in the books and records action. Pasaca and Huang subsequently timely appealed from the trial court's order denying in part the motion to compel arbitration in the civil action. These appeals automatically stayed all proceedings in the trial court.

G.     *Kasprzak's Additional Arbitration Counterclaims*

On October 17, 2023, after the notices of appeal from the underlying trial court rulings were filed, Kasprzak filed additional and amended counterclaims in the arbitration. These included claims for breach of fiduciary duties owed to him as a minority shareholder and for an accounting.[2] The shareholder fiduciary duty counterclaim alleged Huang, as controlling shareholder, breached "fiduciary duties owed by Huang to Kasprzak as minority shareholder" from the time Kasprzak became a shareholder in March 2020. The accounting counterclaim alleged Kasprzak "is entitled to a complete accounting of [Pasaca's] assets, investments, and transactions as a partial owner in [Pasaca], as evidenced by his equity stake in [Pasaca], and as a co-venturer," and "requires an accounting to assess the value of his ownership interest in [Pasaca]." Kasprzak expressly incorporated all of his affirmative defenses from his

---

[2]     We grant appellants' motion in each appeal for judicial notice of the pleadings filed in the arbitration. (See Evid. Code, §§ 452, subd. (d), 459, subd. (a).) Although Kasprzak filed his counterclaims after the appeals, the post-appeal counterclaims are relevant to the issue of mootness and waiver. (See *Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813 (*Reserve*).)

9

April 2023 response opposing the motion to compel arbitration in the civil action.

The arbitration between the parties remains ongoing.

## DISCUSSION

A. *Governing Law and Standard of Review*

"Where, as here, the parties to a lawsuit have executed an arbitration agreement, a 'threshold question . . . presented by every motion or petition to compel arbitration' is 'whether the parties' dispute falls within the scope of that agreement.'" (*Mondragon v. Sunrun Inc.* (2024) 101 Cal.App.5th 592, 601.) "'In determining the scope of an arbitration [agreement], "[t]he court should attempt to give effect to the parties' intentions, in light of the usual and ordinary meaning of the contractual language and the circumstances under which the agreement was made."'" (*Id.* at p. 602, accord, *Victoria v. Superior Court* (1985) 40 Cal.3d 734, 744.) If the parties "presented no extrinsic evidence supporting its interpretation, we need only consider the language of the arbitration agreement." (*Mondragon,* at p. 612.) "'"[W]hile California public policy favors arbitration, ""there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate."""'" (*Mar v. Perkins* (2024) 102 Cal.App.5th 201, 212 (*Mar*).)

"Where 'the evidence is not in conflict, we review the trial court's denial of arbitration de novo.'" (*Mar, supra,* 102 Cal.App.5th at p. 211; accord, *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.)

10

B.      *Mootness and Waiver*

As a preliminary matter, we consider whether these appeals have been rendered moot and whether Kasprzak waived the right to proceed in a judicial forum due to his subsequent filing of arbitration counterclaims that appear to seek the same relief as the court claims at issue. Appellants argued in their briefing that Kasprzak "waived" his right to pursue his co-venture claims and books and records action in superior court through his subsequent submission of the counterclaims in arbitration. Kasprzak argued appellants' argument of waiver or consent to arbitration was not properly before this court because it involved post-appeal events not presented to the trial court, and Kasprzak's arbitration filings were under protest. (See *Douglass v. Serenivision, Inc.* (2018) 20 Cal.App.5th 376, 391 (*Douglass*) ["a party's participation in an arbitral forum does not constitute a waiver if it is preceded by an objection"].) We requested supplemental briefing on whether the appeals from the trial court's orders denying the motions to compel arbitration were rendered moot by Kasprzak's subsequent arbitration counterclaims. We conclude the appeals are not moot and the judicial forum was not waived.[3]

---

[3]      We exercise our discretion to consider appellants' waiver argument. (See *Reserve, supra,* 30 Cal.3d 800, 813 [examining effect of "postjudgment insolvency" "because the fact is not in dispute, [and] we do not usurp the fact-finding function of the trial court. A prompt determination by us avoids the necessity for repetitive litigation of issues that have been fully briefed. Furthermore, the court records regarding Reserve's insolvency would properly be the subject of judicial notice. (Evid. Code, § 452, subd. (d)(1).)"]; cf. *Esparza v. KS Industries, L.P.* (2017)

11

An appeal becomes moot when the subsequent "'"'"occurrence of events renders it impossible for the appellate court to grant appellant any effective relief."'"'"'" (*La Mirada Avenue Neighborhood Assn. of Hollywood v. City of Los Angeles* (2016) 2 Cal.App.5th 586, 590; accord, *In re D.P.* (2023) 14 Cal.5th 266, 276; *National Assn. of Wine Bottlers v. Paul* (1969) 268 Cal.App.2d 741, 746 ["[a]lthough a case may originally present an existing issue (as here), if before decision is reached, it has, through acts of the parties or other cause, lost that existent character, it is rendered moot and may not be considered"].) "An appeal is not moot, however, where 'a material question remains for the court's consideration,' so long as the appellate decision can grant a party to the appeal effectual relief." (*Panoche Energy Center, LLC v. Pacific Gas & Electric Co.* (2016) 1 Cal.App.5th 68, 96.)

The parties both contend, and we agree that, despite the potential overlap between Kasprzak's litigation causes of action and his arbitration counterclaims, the present appeals are not moot. If we affirm the trial court's ruling that the co-venture causes of action and books and records action are not subject to arbitration, the trial court can grant meaningful relief that exceeds the scope of relief available in arbitration if Kasprzak prevails. The co-venture causes of action involve a different legal relationship and time period than Kasprzak's employment-

_____

13 Cal.App.5th 1228, 1237-1238 [appellate courts have "discretion to address questions not raised in the trial court when the theory presented for the first time on appeal involves only a legal question determinable from facts that are (1) uncontroverted in the record and (2) could not have been altered by the presentation of additional evidence"].)

12

related claims, as we explain below, which may not be fully encompassed by an arbitral decision. And as to the books and records action, Kasprzak could prevail under Corporations Code section 1601 because he has a proper purpose for the request as a shareholder, whereas receiving the accounting in the arbitration would require that he first prevail on his substantive claims before an accounting is ordered. (See *Janis v. California State Lottery Com.* (1998) 68 Cal. App. 4th 824, 833 [the "right to an accounting is derivative" and "must be based on other claims"].)

We also conclude Kasprzak did not waive the judicial forum. In their appellate briefing and at oral argument, appellants argued that under *Douglass, supra,* 20 Cal.App.5th 376, and *O'Malley v. Petroleum Maintenance Co.* (1957) 48 Cal.2d 107 (*O'Malley*), Kasprzak waived his right to a judicial forum for his shareholder/co-venture causes of action and the books and records action by voluntarily filing similar counterclaims in the arbitration after the trial court denied appellants' motions to compel arbitration of those causes of action. We examine both cases in detail.

In *O'Malley*, a union and company entered into a written agreement to submit both the arbitrability and merits of an employee discharge dispute to arbitration after the trial court ordered that the merits of the discharge were subject to arbitration. The company had previously argued that the merits of the parties' dispute (i.e., the discharge of the employee) was not subject to arbitration. (See *O'Malley, supra*, 48 Cal.2d at p. 108.) The parties' written agreement provided that, "'[i]n submitting this matter to arbitration neither party shall be deemed to have waived any rights given them by law.'" (*Ibid.*) The arbitration panel concluded "the dispute was not arbitrable

13

under the collective bargaining agreement and that [it] would have declined jurisdiction had it not been for the order of the court requiring arbitration on the merits," and thereafter "[a] majority of the arbitrators then concluded that [the employee] had been improperly discharged." (*Id.* at p. 110.) *O'Malley* rejected the company's argument on appeal that it had not waived its right to contest the arbitrability of the dispute in court. The court determined that the company, "having submitted the arbitrability of the discharge to the arbitration [panel], when the court order did not require such arbitration, has waived its right to object to the arbitrability of the question." (*Ibid.*) *O'Malley* stated that "[w]ith respect to Company's argument that it had specifically provided that it was not to be deemed 'to have waived any rights given them by law' it appears that Company may not agree to arbitrate a question and then, if the decision goes against it, litigate the question in another proceeding." (*Ibid.*)

In *Douglass*, the plaintiff responded to a demand for arbitration without objection, stated to the arbitrator he was "voluntarily" submitting to arbitration to avoid litigation costs, appeared at several prehearing conferences without objection, and then 10 months into the proceedings and after an adverse ruling, attempted to rescind his voluntary participation shortly before the evidentiary hearing because the defendant refused to post a bond for attorney fees. (*Douglass, supra,* 20 Cal.App.5th at pp. 381-383, 388.) When the plaintiff failed to show up for the evidentiary hearing, the arbitrator ruled against him. (See *id.* at p. 383.) *Douglass* concluded that a party who "substantially invoked the machinery of the arbitral forum in asking the arbitrator for relief, delayed until the eve of the evidentiary

14

hearing his proclamation that his voluntary participation was conditional, and purposefully availed himself of the cheaper arbitral forum until the arbitrator made a ruling he did not like," had waived his right to a judicial forum. (*Id.* at p. 390.)

*Douglass* explained that the test for assessing whether a party has waived the right to a judicial forum is "less onerous" than the test for assessing whether a party has waived the right to arbitrate, because public policy militates in favor of arbitration. (*Douglass, supra,* 20 Cal.App.5th at pp. 389-390.) But, in either case "[w]hether a party's conduct constitutes consent is necessarily fact specific," with particular attention to the party's objection or lack thereof to the forum. (*Id.* at p. 388.) *Douglass* reasoned that: "On the one hand, consent to arbitration . . . will not be inferred solely from a party's conduct of appearing in the arbitral forum to object to the arbitrator's exercise of jurisdiction, at least if the party makes that objection 'prior to participat[ing]' in the arbitration. [Citations.] On the other hand, consent to arbitration . . . *will* be inferred from a party's conduct of litigating an issue up to the point of submitting it for decision in the arbitral forum, at least if the party does so without objection." (*Id.* at pp. 387-388, emphasis added.) Under the facts in *Douglass*, the court concluded that the plaintiff's "voluntarily participation in an arbitration . . . , without any objection or reservation and done for tactical reasons, constitutes clear and unmistakable evidence of [his] consent to have the arbitrator decide that issue." (*Id.* at p. 389.)

Under the circumstances presented, we conclude Kasprzak has not waived the judicial forum as to his co-venture causes of action and his books and records action because he submitted his arbitration counterclaims under protest, and he has consistently

15

objected to arbitration of those claims. Unlike *O'Malley*, Kasprzak did not sign a separate agreement to arbitrate the claims the trial court excluded from arbitration, nor is there any contention he objected to arbitration only after an adverse merits ruling. And unlike the plaintiff in *Douglass*, Kasprzak has repeatedly objected to arbitration. First, Kasprzak opposed both motions to compel arbitration. Next, his initial response to the arbitration demand and his submission of the arbitration counterclaims for those claims the trial court ordered to arbitration were both accompanied by a clear objection to arbitration and an assertion of his right to litigate his remaining causes of action in the civil action. (See *Douglass*, *supra*, 20 Cal.App.5th at p. 391.) And when he submitted the remaining counterclaims to the arbitrator, Kasprzak did so under protest and expressly incorporated his initial objections and defenses from his arbitration response. Because there is no contention before us that Kasprzak objected to arbitration only after an adverse merits ruling from the arbitrator or that the matter has been litigated in the arbitration and is nearing a decision, Kazprzak has sufficiently preserved his right to proceed in court on his co-venture causes of action and his books and records action.

C.    *The Trial Court Properly Denied the Motions To Compel Arbitration*

1.    *Kasprzak's Co-venture Causes of Action*

As stated, the parties' arbitration agreement here covers "any dispute or claim relating to or arising out of [the] employment relationship" between Kasprzak and Pasaca. The parties dispute whether Kasprzak's fifth and sixth causes of

16

action in his civil suit—alleging breach of fiduciary duties and unjust enrichment—and his books and records action fall within the scope of this clause. As we explain below, we conclude they do not.

Pasaca and Huang argue that the arbitration provision's use of "relating to" is broader than claims merely "arising out of" the employment relationship, such that they encompass Kasprzak's claims because Kasprzak was a de facto employee starting in March 2020, his claims "overlap" with those in arbitration, and Kasprzak's purchase of shares was "in connection with his work." Kasprzak argues his co-venture claims (breach of fiduciary duties and unjust enrichment) are not "rooted in" the employment agreement because they predate it by many months and exist independently of his contractual employment relationship with Pasaca. Kasprzak's interpretation of the arbitration agreement is correct.

The phrase "'relating to'" in an employment arbitration agreement "expands the reach of the agreement to encompass claims rooted in the employment relationship"—i.e., both contract claims and tort claims rooted in the contract. "[T]he inclusion of 'relating to' typically justifies applying arbitration agreements to claims that do not arise from the contract." (*Vaughn v. Tesla, Inc.* (2023) 87 Cal.App.5th 208, 220-221 (*Vaughn*).) But "the phrase normally encompasses extracontractual claims only 'so long as they have their roots in the relationship between the parties which was created by the contract.'" (*Id.* at p. 221; accord, *Khalatian v. Prime Time Shuttle, Inc.* (2015) 237 Cal.App.4th 651, 660.) Claims still must be "rooted in the employment relationship established by the contract containing an arbitration provision" to be arbitrable. (*Vaughn,* at p. 221 [arbitration

17

provision did not apply to employment discrimination claims which arose when the employees initially worked at the company as staffing agency employees, before becoming company employees].)  This "rooted in" test prevents arbitration clauses from absorbing claims that merely "are factually similar or share evidence in common" with arbitrable disputes.  (*Id.* at p. 222.)

 *Vaughn* rejected the argument "that the 'relating to' phrase means [an] [a]rbitration [p]rovision applies to any past dispute between the parties, based on events occurring before commencement of the contractual 'employment' relationship." (*Vaughn, supra,* 87 Cal.App.5th at p. 222.)  *Vaughn* also rejected the contention that "factual commonalities are sufficient to justify extension of an arbitration agreement to precontractual employment claims absent any indication the parties understood the agreement would apply in that manner."  (*Ibid.*)  Rather, the critical inquiry is whether the claims are legally rooted in the contractual relationship containing the arbitration clause, not whether they involve overlapping facts or time periods.  (See *ibid.*)  Similarly, in *Howard v. Goldbloom* (2018) 30 Cal.App.5th 659, 670-671 (*Howard*), the court determined that shareholder claims against a former employer were not arbitrable under an employment arbitration clause covering claims "in any way related to" the plaintiff's employment, even though the plaintiff had received company stock as employment compensation.  The court explained the employee became a minority shareholder of the company before he became an employee, therefore the "obligations allegedly breached [by the company] preexist [plaintiff's] employment relationship" and were not claims "related to" his employment under the employment arbitration clause.  (*Howard,* at pp. 666, 670.)

Here, similar to *Vaughn* and *Howard*, Kasprzak's co-venture claims and shareholder claims cannot possibly be """"root[ed] in the relationship between the parties which was created by the [employment] contract'"—*because that relationship did not yet exist"* at the time the co-venture was formed and the underlying obligations arose. (*Vaughn, supra,* 87 Cal.App.5th at p. 222.)

Although appellants argue that *Vaughn* and *Howard* present factual and temporal circumstances that were more "clearly segregable between arbitrable and non-arbitrable claims," the record here also reflects a clear and intentional delineation of the period covered by the employment agreement. Kasprzak's co-venture relationship with Huang began in early 2020, months before any formal employment arrangement. As part of this co-venture, Kasprzak purchased 750,000 shares of Pasaca through a subscription agreement effective March 1, 2020. The employment agreement containing the arbitration clause was not signed until June 2021 and was retroactive only to October 1, 2020—months after the co-venture formation and share purchase. The parties could have chosen to make it retroactive to March 2020 or earlier, but did not. Had the parties intended the arbitration clause to govern pre-existing relationships, they could have so specified. But the employment agreement makes no reference to Kasprzak's pre-existing business relationship or share ownership, the subscription agreement, or any shareholder rights.

Under the circumstances presented, "the inclusion of the language 'relating to' does not justify applying the [a]rbitration [p]rovision to those claims." (*Vaughn, supra,* 87 Cal.App.5th at p. 222.) The alleged wrongful conduct underlying the co-venture

19

claims—Huang's breach of fiduciary duties to his co-venturer and Huang's unjust enrichment therefrom—stems from obligations that predate and exist independently of any contractual employment relationship. Huang's fiduciary obligations to Kasprzak as a co-venturer arise from their joint business arrangement, not from Kasprzak's later employment by Pasaca. These duties would exist regardless of whether Kasprzak ever became a Pasaca employee.

2. *Kasprzak's Books and Records Action*

We similarly conclude Kasprzak's books and records action is rooted in his shareholder status, not in his employment. Under Corporations Code section 1601, shareholders have the right to inspect corporate "accounting books, records, and minutes of proceedings" upon demand, provided the inspection is "for a purpose reasonably related to the holder's interests as a shareholder." (Corp. Code, § 1601, subd. (a)(1).) This statutory right allows shareholders to monitor management and assess their investments. (See *Schnabel v. Superior Court* (1993) 5 Cal.4th 704, 715-716 (*Schnabel*).) Kasprzak's shareholder rights—including his statutory right to inspect corporate books and records—arose from the March 2020 subscription agreement, before any employment relationship existed. Pasaca's duties to Kasprzak as a company shareholder would exist regardless of his employment contract or how he acquired his shares. (See *Howard, supra,* 30 Cal.App.5th at p. 670.)

To the extent Pasaca contends Kasprzak's shareholder status is disputed in the arbitration proceeding because Pasaca purportedly voided Kasprzak's shares after his termination, the threshold question for arbitrability remains whether the books

and records action itself "relates to" the employment relationship within the meaning of the arbitration clause, not whether a defense to his shareholder status may exist.[4]  A request rooted in shareholder status does not become employment-related and arbitrable simply because the validity of that status may be contested on employment-related grounds.  Likewise, that Kasprzak's books and records action sought "the same information" as his discovery requests in the civil litigation and arbitration proceeding does not establish that the books and records action "relates to" the employment relationship.  Shareholders may seek books and records for multiple proper purposes simultaneously, and "ascertaining the value of the shareholder's stock is reasonabl[ly] related" to shareholder interests, regardless of other motivations.  (See *Schnabel, supra,* 5 Cal.4th at p. 715 [wife's interest in ascertaining the value of community property stock for purposes of divorce litigation reasonably related to her interest as a shareholder].)  The proper remedy for discovery circumvention would be to deny the petition on improper purpose grounds under Corporations Code section 1601, not to compel arbitration of a non-arbitrable claim.  And appellants only appealed the denial of arbitration of this claim, rather than the order granting the section 1601 request.

---

[4]     Pasaca does not challenge on appeal the trial court's ruling that Pasaca's evidence it voided Kasprzak's shares was insufficient and improperly authenticated, and any challenge on appeal is forfeited.  (See *Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 72 [failure to challenge a portion of trial court's order in opening brief forfeits that argument on appeal].)

3.	*The Parties' Other Arguments*

Appellants argue in their reply briefs that the arbitration clause requires resolution of "all disputes" between Kasprzak and the company without limitation once any employment-related dispute arises.  Generally, ""points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before."" (*Doe v. California Dept. of Justice* (2009) 173 Cal.App.4th 1095, 1115.)  In all events, the "all disputes" language appears in a clause describing the arbitration procedure once a covered dispute arises:  "in the event of any dispute or claim relating to or arising out of our employment relationship, you and the Company agree to an arbitration in which . . . (ii) we agree that all disputes between you and the Company shall be fully and finally resolved by binding arbitration."[5]  That is, this language does not expand the substantive scope of the arbitration clause beyond disputes "relating to or arising out of [the] employment relationship."  Although appellants argue some arbitration agreements may

---

[5]	In full, the arbitration clause reads:

"Moreover, in the event of any dispute or claim relating to or arising out of our employment relationship you and the Company agree to an arbitration in which (i) you are waiving any and all rights to a jury trial but all court remedies will be available in arbitration, (ii) we agree that all disputes between you and the Company shall be fully and finally resolved by binding arbitration, (iii) all disputes shall be resolved by a neutral arbitrator who shall issue a written opinion, (iv) the arbitration shall provide for adequate discovery, and (v) the Company shall pay all the arbitration fees except an amount equal to the filing fees you would have paid had you filed a complaint in a court of law."

encompass disputes arising before the arbitration agreement was signed, the cases they cite involve arbitration clauses more broadly worded than the one here.  (See *Salgado v. Carrows Restaurants, Inc.* (2019) 33 Cal.App.5th 356, 360-362 ["[arbitration] provision unequivocally require[d] arbitration for 'any claim'" employee had against restaurant]; *Desert Outdoor Advertising v. Superior Court* (2011) 196 Cal.App.4th 866, 877 ["arbitration clause [wa]s broad and specific, applying to 'any . . . dispute of any kind whatsoever between us[,]'" with "no temporal limitation"].)

Further, the language of the employment agreement is prospective and forward-looking, describing Kasprzak as a "potential employee" and stating that Pasaca "is excited about your joining and looks forward to a beneficial and fruitful relationship."  The arbitration clause also uses future-oriented language, applying "*in the event of* any dispute or claim relating to or arising out of our employment relationship."  (Emphasis added.)  This language and structure suggest it was not intended to encompass pre-existing relationships beyond the stated retroactive date.  (See *Vaughn, supra,* 87 Cal.App.5th at p. 223 ["forward-looking language suggests the intent of the [a]rbitration [p]rovision is to address claims based on incidents occurring during the period of direct employment"].)

We therefore affirm the trial court's denial of the motion to compel arbitration of the fifth and sixth causes of action for breach of fiduciary duty and unjust enrichment in Kasprzak's civil action, and the trial court's denial of the motion to compel arbitration in the books and records action.

**DISPOSITION**

The orders of the trial court are affirmed.  Kasprzak is to recover his costs on appeal.

MARTINEZ, P. J.

We concur:

FEUER, J.                                    STONE, J.