Filed 3/24/26  O'Leary v. Jones CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JENNIFER O'LEARY, | D086906 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. CVRI2404688) |
| WALTER JONES III et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Riverside County, Eric A. Keen, Judge.  Motion to dismiss denied.  Reversed and remanded with directions.

Reeves & Weiss, Jeffrey H. Reeves, Daniel L. Weiss and Lindley G. Round, for Plaintiff and Appellant.

Rod Pacheco and Irasema Rocha, for Defendant and Respondent Walter Jones III.

Thomas N. Jacobson for Defendants and Respondents Kevin Wolf and Rami Tahhan.

This appeal arises out of a commercial lease dispute. The lessor was Michael Scheinker, who has been succeeded in the litigation by appellant Jennifer O'Leary.[1] The lessee was Green America, Inc., which is not a party to this matter. Rather, the defendants include various individuals associated with Green America: Walter Jones III, who signed the lease agreement on behalf of the company and executed a personal guarantee; Kevin Wolf, Green America's chief operating officer and chief financial officer; and Rami Tahhan, Green America's secretary.

Along with Green America, these three individuals participated in a year-and-a-half-long arbitration, culminating in an award in favor of Scheinker. At no point during the arbitration did anyone object to the arbitral forum. But when Scheinker sought to confirm the award, the superior court found that Jones, Tahhan, and Wolf (collectively, the defendants) were not bound to arbitrate under the arbitration agreement and were not parties to the court action. Based on these findings, the court dismissed Scheinker's petition on "personal jurisdiction" grounds. Scheinker filed but later dismissed his appeal in that matter, apparently deciding to remedy the issues identified by the first court by filing a second petition to confirm in a separate action.

It is Scheinker's second petition that gives rise to this appeal. The court concluded that the new petition to confirm the arbitration award was precluded by the final judgment dismissing Scheinker's first petition. The court nonetheless went on to reach the merits, concluding that it would deny the petition on "due process" or equitable grounds even if it had not found Scheinker's petition precluded by the earlier action.

---

[1] For brevity, we refer to Scheinker as the party in the trial court, and O'Leary as appellant on this appeal.

In the unique circumstances of this case, we find that applying issue or claim preclusion would frustrate rather than further the public policies underlying those equitable doctrines. Thus, we find that the first court's order does not preclude Scheinker's second petition. With respect to the merits of the petition, judicial review of the arbitration is limited by statute. Because defendants do not contend that they timely filed petitions to vacate or correct the arbitration award, the only question presented in this action is whether to dismiss on the ground that the defendants were not bound by the arbitration award and were not parties to the arbitration. There is no substantial evidence in the record that defendants were not parties to the arbitration. Accordingly, we reverse and remand for the trial court to enter an order confirming the arbitration award.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Lease Agreement and Jones's Guarantee*

In 2017, Scheinker leased a property in Riverside County (the Property) to Green America, which intended to open a marijuana dispensary. Jones, along with several other individuals not parties to this matter, signed the lease on behalf of Green America. Jones also signed a guarantee clause in the lease that provides:

> "In consideration of the execution of this Agreement by and between Landlord and Tenant and for valuable consideration, receipt of which is hereby acknowledged, the undersigned ('Guarantor') does hereby: (i) guarantee unconditionally to Landlord and Landlord's agents successors and assigns, the prompt payment of Rent or other sums that become due pursuant to this Agreement, including any and all court costs and attorney fees included in enforcing the Agreement; (ii) consent to any changes, modifications or alterations of any term in this Agreement agreed to by Landlord and Tenant; and (iii) waive any right

3

to require Landlord and/or Landlord's agents to proceed against Tenant for any default occurring under this Agreement before seeking to enforce this Guarantee."

The lease contained an arbitration provision stating:

"ARBITRATION OF DISPUTES:  (1) Tenant and Landlord agree that any dispute or claim in law or equity arising between them out of this agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration . . . .  [T]he arbitration shall be conducted in accordance with Part III, Title 9 of the California code of Civil Procedure.  Judgment upon the award of the arbitrator(s) may be entered in any court having jurisdiction.  The parties shall have the right to discovery in accordance with Code of Civil Procedure § 1283.05."

## B.  *Litigation and Arbitration of Property-Related Disputes*

In 2020, Green America sued Scheinker, alleging causes of action related to the lease.[2]  Scheinker demanded arbitration in accordance with the lease; the court ordered the parties to arbitration and stayed the court action. Preparations began for a JAMS arbitration before a retired superior court judge.

Scheinker filed a counterdemand for arbitration against Green America, Jones, Wolf, and Tahhan.  He alleged that:  (1) Green America, Jones, Wolf, and Tahhan had converted tools and equipment he had stored on the Property; (2) Green America materially breached the lease by making unpermitted modifications to the Property for which Jones was personally liable as guarantor; (3) under the terms of the lease and the guarantee clause, Scheinker was entitled to indemnity from Green America and Jones

---

[2]    Pursuant to O'Leary's request filed on September 24, 2025, we take judicial notice of the complaint filed by Green America.

4

in the event Scheinker was subject to an enforcement action due to municipal code violations; and (4) Scheinker was also entitled to implied or equitable indemnity from Green America, Jones, Wolf, and Tahhan in connection with any enforcement action.

According to the arbitrator's status report, Jones, Wolf, and Tahhan were each served with Scheinker's counterdemand in March of 2022, but "none of the Counter-respondents had filed Responses to the Counter-claim within fourteen (14) days of service pursuant to JAMS Comprehensive Arbitration Rule 9 (d)." In accordance with the JAMS rules, their failure to file a response was treated as a denial of the allegations of Scheinker's counterclaims, as defaults are not permitted.

This report also reflects that "Rod A. Pacheco, Esq. and Molly J. Magnuson, Esq. appeared [at the conference] on behalf of Counter-respondents, Dr. Walter Jones III, Rami Tahhan and Kevin Wolf," while "Lawrence C. Ecoff, Esq. appeared on behalf of Claimant," Green America. "Counsel for Counter-respondents (Ms. Magnuson) informed the Arbitrator that a mediation had been scheduled . . . on May 18, 2022, pursuant to the mediation provision in" the lease, and the arbitrator "instructed all parties to participate in the mediation, in good faith, in an effort to settle the case without further arbitration proceedings." This status report does not reflect that Jones, Wolf, or Tahhan objected to being named as parties in the arbitration or to participating in the mediation.

At the next status conference on May 20, 2022, "Rod A. Pacheco, Esq. and Eric Fromme, Esq. appeared on behalf of Counter-respondents, Dr. Walter Jones III, Rami Tahhan and Kevin Wolf," while Ecoff again appeared on behalf of Green America. The arbitrator noted that "Counter-respondents had not yet complied with the document exchange," and "[a]fter discussing

5

this matter at length, . . . instructed all counsel to comply with JAMS Comprehensive Arbitration Rule 17 (a) document exchange by June 3, 2022." The order again does not reflect any objection by Jones, Wolf, or Tahhan to being named as parties in the arbitration or being required to comply with JAMS discovery.

By September, Wolf and Tahhan had still not produced documents in accordance with the arbitrator's instructions and, while the arbitrator "acknowledged that Counter-Respondents, Kevin Wolf and Rami Tahhan, had just retained new counsel (Mr. Edmondson)," he "again expressed his frustration with the delays caused by Messrs. Wolf and Tahhan changing attorneys." The arbitrator instructed Wolf and Tahhan's new counsel "to compile all documents responsive to JAMS Comprehensive Arbitration Rule 17 (a) and to provide them to all other counsel immediately - preferably by" the next day. He instructed Scheinker's counsel to meet and confer with Wolf and Tahhan's counsel "to set a compliance date . . . if the documents" were not produced immediately. The arbitrator also granted Scheinker leave to file a motion to compel documents and for sanctions and set forth a briefing schedule if documents were not produced.

When Wolf and Tahhan failed to provide any documents, Scheinker filed a motion for sanctions against Green America, Wolf, Tahhan and their attorneys of record. Green America, Wolf, and Tahhan filed an opposition. The arbitrator denied Scheinker's motion without prejudice, but directed "Wolf and Tahhan to produce various documents to Scheinker by October 31, 2022."

It seems Wolf and Tahhan still did not produce any documents, and, on February 3, 2023, the arbitrator granted Scheinker's motion for terminating sanctions against Green America, Wolf, and Tahhan, dismissing Green

America's claims against Scheinker. The arbitrator subsequently entered partial final judgment on Green America's claims and awarded $315,836.94 in fees and costs to Scheinker.

On March 27, 2023, the arbitrator granted another "Motion for Issue/Evidentiary/Monetary Sanctions" against Green America, Wolf, and Tahhan. At the hearing on that motion, "Kevin Abbott, Esq. appeared on the call and indicated that he may be retained by Counter-Respondents, Kevin Wolf and Rami Tahhan." "Wolf also joined the call," but Tahhan did not. The arbitrator granted Scheinker's motion and, as sanction for their failure to comply with necessary document exchange, essentially found that Scheinker had established his conversion claim against Green America, Wolf, and Tahhan. He found, among other things: "Green America, Wolf and Tahhan substantially interfered with Scheinker's personal property by failing to safeguard it, and intentionally destroying, disposing of, or refusing to return the personal property after Scheinker demanded its return," and that "Green America, Wolf and Tahhan's conduct was a substantial factor in causing Scheinker's harm."

On May 22, 2023, Thomas Jacobson made an appearance on behalf of Tahhan and Wolf, submitting a letter to the arbitrator. He argued the issue of sanctions should be "reopen[ed]," stating: "My clients should not be denied the right of being able to defend themselves from the cross claim. It is a serious allegation to suggest that my clients stole personal property belonging to Mr. Scheinker and then be maneuvered through motions and the emotions of the moment to a position of not being able to even mount a defense. [¶] My clients have already sat through hours of depositions and responded to extensive discovery. Notwithstanding, I offered to [Scheinker's counsel] that my clients would sit for a further deposition and I would

7

address each specific discovery issue [Scheinker] believes has not been fully addressed. My clients have agreed with me to be cooperative in the discovery matter." Jacobson did not deny that Wolf and Tahhan were parties to the arbitration or that they had discovery obligations. Instead, he asserted that it was "in the best interest of due process and a resolution on the merits that we allow all of the parties to be heard on the merits, and reach the point where we can do such by resolving any outstanding discovery issues."

At some point in the following months, Scheinker filed a motion for summary adjudication. Jones filed an opposition to this motion asserting arguments concerning his own liability. In that opposition, Jones did not argue that he had not agreed to arbitration.

Wolf and Tahhan also filed an opposition to Scheinker's motion, asserting there was no evidence to support Scheinker's conversion claim against them. They also argued (1) they were not personally responsible for maintaining the records Scheinker had sought in support of his conversion claim, and (2) they had no personal duty to protect Scheinker's personal property. They did not argue they were not liable because they had not been joined in the arbitration or that they had not agreed to arbitrate this claim.

After the arbitrator issued a tentative ruling in favor of Scheinker, Wolf and Tahhan filed an "Opposition to Proposed Judgment" in which they reiterated that they should not be held liable because they were merely "shareholders." They also argued that the court should not award punitive damages against them for nonpayment of arbitration fees because Scheinker had paid the fees, nor for their discovery malfeasance because they had already been sanctioned. Again, they never objected on grounds they had not agreed to arbitrate or indicate they had at any point been confused as to their status as parties.

8

After a hearing, at which Jones, Wolf, and Tahhan appeared through their respective counsel, the arbitrator entered judgment in Scheinker's favor. The arbitrator found that Jones was the guarantor on the lease and was thus "jointly and severally liable for all amounts owed by Green America to Scheinker under" the lease. The arbitrator awarded: (1) "attorney fees & costs against Green America (and Jones as guarantor of the Lease) related to the defense of the Demand for Arbitration in the amount of $315,836.94"; (2) "damages against Green America (and Jones as guarantor of the Lease) for breach of contract and unauthorized alterations to the subject property in the amount of $531,565.41"; (3) "damages against Green America, Wolf[] and Tahhan, for conversion of personal property in the amount of $114,936.79"; (4) "punitive damages against Green America, Wolf[] and Tahhan, in connection with the conversion of personal property in the amount of $342,068.72"; and (5) "additional fees & costs against Green America (and Jones as guarantor of the Lease) related to the prosecution of Scheinker's Counter-claims in the amount of $135,672.90." That order, issued on December 18, 2023, disposed of all claims in the arbitration except for Jones's separate claims against third parties.

## C.    *Scheinker's First Petition to Confirm the Arbitration Award*

Scheinker filed a petition to confirm the arbitration award as against Green America, Jones, Wolf, and Tahhan. The superior court sua sponte raised the issue of personal jurisdiction. After a hearing, the court confirmed the award against Green America, which did not oppose the petition, but "denied" the petition "as against" the individual defendants.

The court identified "an issue of personal jurisdiction over Wolf, Tahhan and Jones," who "were named as counter-respondents in Scheinker's counter-demand in arbitration, but never named parties in this action."

9

The order cites Code of Civil Procedure[3] section 1293, which provides that "[t]he making of an agreement in this State providing for arbitration to be had within this State shall be deemed a consent of the parties thereto to the jurisdiction of the courts of this State to enforce such agreement by the making of any orders provided for in this title and by entering of judgment on an award under the agreement." The court concluded that "Scheinker failed to produce any evidence that Wolf, Tahhan or Jones ever agreed to arbitrate any claims," noting that Wolf and Tahhan were not signatories to the lease, Jones did not sign the lease in a personal capacity, and the guarantee clause did not "incorporate the arbitration provision included in the Lease."

According to the court, it was irrelevant that defendants had been named in both the arbitration and the petition to confirm arbitration award because they had not been joined in the original court action when the matter was ordered to arbitration, and "personal jurisdiction over non-parties is established under [section] 1293." The court also rejected Scheinker's argument that the court had personal jurisdiction over defendants "based on their contacts with the forum state pursuant to [section] 410.10," because that provision "governs personal jurisdiction over parties named in an action," and because "Wolf, Tahhan and Jones were never named parties to this action." Similarly, the court rejected the argument that defendants had made a general appearance stating, "The argument relating to 'general appearance' is misplaced as this concept only applies to named defendants."

Later, in a postjudgment order denying Jones's motion for attorney fees, the court characterized its ruling on the petition to confirm as follows:

---

[3]     Undesignated statutory references are to the Code of Civil Procedure.

10

> "The Court granted Scheinker's petition to confirm the arbitration award against Green America only, and denied the petition as to Wolf, Tahhan and Jones, finding that the Court lacked personal jurisdiction over them. Notably, the Court declined to rule on Jones' request to vacate the arbitration award. Accordingly, the Court finds that there was no prevailing party as between Jones and Scheinker in the postarbitration proceedings."

> "[T]he Court acted sua sponte in determining that it lacked personal jurisdiction over Jones and declined to rule on Jones' request to vacate the award. Thus, the Court did not rule on whether the arbitration award is enforceable against Jones, and neither Jones nor Scheinker are prevailing parties in the postarbitration proceeding."

Although Scheinker filed an appeal in that matter, he voluntarily dismissed it.

**D.** *Scheinker's Second Petition to Confirm the Arbitration Award*

Scheinker initiated a new case by filing a second petition to confirm the arbitration award on August 20, 2024. The matter was heard by a different judge, but he nonetheless denied the second petition. First, the court thought it appropriate to apply "issue preclusion and . . . res judicata,"[4] "finding that

---

4      As the Supreme Court has explained: "We have frequently used 'res judicata' as an umbrella term encompassing both claim preclusion and issue preclusion, which have been described as two separate 'aspects' of an overarching doctrine. [Citations.] Claim preclusion, the ' " 'primary aspect' " ' of res judicata, acts to bar claims that were, or should have been, advanced in a previous suit involving the same parties. [Citation.] Issue preclusion, the ' " 'secondary aspect' " ' historically called collateral estoppel, describes the bar on relitigating issues that were argued and decided in the first suit." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823–824 (*DKN*).) The case law sometimes has described res judicata as "synonymous with claim preclusion, while reserving the term 'collateral estoppel' for issue preclusion. [Citations.] On occasion, however, the term 'res judicata' has been used more broadly, even in a case involving only *issue* preclusion, or

11

the issue before [the first judge was] virtually identical to the issue before this Court regarding whether or not the Court has jurisdiction over Mr. Wolf, Tahhan, and Jones." In the alternative, the court determined:

> "I would also deny the petition because Mr. Wolf, Mr. Tahhan and Mr. Jones were never joined in the arbitration. My understanding from reading the brief was that somehow they participated, but I think that's a little bit of difference of opinion as to what happened.

> "I don't have the transcript from the arbitration, but after hearing from Mr. Jacobson [counsel for Wolf and Tahhan] and Mr. Pacheco [counsel for Jones], it appears that neither one of the defendants participated in the arbitration. I thought maybe they had testified as witnesses at least, but it doesn't sound like that even happened."

> "I think it would violate equity if the Court were to grant a petition to enforce an arbitration award against defendants that never participated in the arbitration, never were joined, and then never agreed to participate and then were not bound by the original contract or agreement where parties agreed to settle disputes by way of arbitration."

## DISCUSSION

Because it influences our ultimate conclusions, we begin by addressing defendants' contention that they were not parties to the arbitration at all.[5]

---

collateral estoppel." (*Id.* at p. 824.) To avoid confusion, it is preferable to "use the terms 'claim preclusion' to describe the primary aspect of the res judicata doctrine and 'issue preclusion' to encompass the notion of collateral estoppel." (*Ibid.*) Although the difference between the doctrines is not especially relevant to our analysis here, we follow the Court's guidance and use the terms claim preclusion and issue preclusion.

[5] Jones asks this court to dismiss the appeal because O'Leary withdrew her motion to substitute as plaintiff in the trial court, ostensibly to frustrate Jones's efforts to seek attorney fees. It appears there are ongoing proceedings in the trial court with respect to Jones's motion to substitute O'Leary. Jones, who himself has apparently taken inconsistent positions

The record reflects that defendants: (1) were named as parties in Scheinker's counterdemand for arbitration; (2) were served with the counterdemand; (3) were represented in the arbitration by their own attorneys; (4) personally appeared at many proceedings, where they were each identified as "counter-respondents"; and (5) submitted substantive briefing. There is no evidence in the record that any defendant objected to being subject to arbitration until after the award was final. Accordingly, we find that Jones, Wolf, and Tahhan were parties to the arbitration.

Next, we determine that the first court's judgment does not preclude the second petition to compel arbitration because applying claim or issue preclusion would undermine the public policies behind those doctrines. We think applying preclusive effect would erode confidence in the judiciary, as O'Leary's litigation choices seem to have been shaped by the first court's erroneous statements. It would also undermine public policy in favor of respecting final arbitration awards by unwinding over a year of arbitral proceedings in which all of the parties participated. Further, preclusion would not advance the parties' interest in finality, as dismissing the second petition to confirm would not preclude O'Leary from continuing to litigate her substantive claims.

Finally, we turn to the trial court's alternative holding, that it "would violate equity" to confirm the arbitration award because defendants were not parties to the arbitration. The defendants do not dispute O'Leary's contention that they failed to timely request vacatur of the arbitration award. Accordingly, the court was required to confirm the petition unless defendants

---

with respect to whether O'Leary should be substituted in as plaintiff in the trial court, has not pointed to any conduct that would support this drastic remedy.

13

were "not bound by the arbitration award *and* . . . not a party to the arbitration." (§ 1287.2, italics added.) As already noted, defendants *were* parties to the arbitration. That ends the analysis with respect to the limited judicial review of the arbitrator's decision authorized by statute. We accordingly remand with instructions to confirm the award.

## A. *Whether Defendants Were Parties to the Arbitration*

A "party to the arbitration" includes one "[w]ho is made a party to such arbitration by order of the neutral arbitrator . . . upon the application of any other party to the arbitration, or upon the neutral arbitrator's own determination." (§ 1280, subd. (h)(3).)[6] Although a party cannot be forced to arbitrate by an arbitrator's order alone, "one who voluntarily joins an arbitration becomes a party to it." (*Lovret v. Seyfarth* (1972) 22 Cal.App.3d 841, 859 (*Lovret*).) An express agreement is not required. "[C]onsent to arbitration . . . will be inferred from a party's conduct of litigating an issue up to the point of submitting it for decision in the arbitral forum, at least if the party does so without objection." (*Douglass v. Serenivision, Inc.* (2018) 20 Cal.App.5th 376, 388 (*Douglass*).) Thus, "a party who questions the validity of the arbitration agreement may not proceed with arbitration and preserve the issue for later consideration by the court after being unsuccessful in the arbitration." (*Bayscene Resident Negotiators v. Bayscene Mobilehome Park*

---

6    O'Leary does not argue that defendants were bound to arbitrate by the arbitration agreement. We therefore do not address that issue.

14

(1993) 15 Cal.App.4th 119, 129 (*Bayscene*), citing *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 29–31 (*Moncharsh*).)[7]

As indicated by our recitation of the factual history, the record before this court demonstrates that all three defendants voluntarily participated in the arbitration and failed to raise any objection, either before the arbitrator or by seeking judicial intervention.  With respect to Wolf and Tahhan, they first appeared as parties, represented by counsel, on May 6, 2022, and the arbitrator noted they had been served with Scheinker's counterdemand. They thereafter appeared as parties, represented by counsel, on May 20, 2022; August 3, 2022; September 15, 2022; and December 12, 2023.  They also appeared unrepresented on September 2, 2022, and an attorney who said he expected to be retained by Wolf and Tahhan appeared at a hearing on March 27, 2023.  There is no indication they raised any concern about being part of the arbitration at any point over the year and a half they continued to

---

[7]     Courts have variously framed this issue as one of waiver, forfeiture, estoppel, or an implied-in-fact arbitration agreement.  (See *Moncharsh*, *supra*, 3 Cal.4th at p. 31 ["Failure to raise the claim [of illegality of a contract or arbitration agreement] before the arbitrator . . . waives the claim for any future judicial review"]; *Douglass*, *supra*, 20 Cal.App.5th at p. 387 ["parties may enter into an implied in fact agreement to arbitrate through their conduct"]; *Lovret*, *supra*, 22 Cal.App.3d at p. 862 [wife of signatory to arbitration agreement was "estopped from claiming that she was not a party to the arbitration"].)  We do not find it necessary to exhaustively analyze these labels or the underlying concepts for our present purposes, as the parties do not raise arguments regarding any potential distinctions.

Wolf and Tahhan briefly argue that *Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562, is relevant to the standard of review here. That case observed that "the party opposing enforcement of a contractual agreement must prove by clear and convincing evidence that the waiving party knew of the contractual right and intentionally relinquished or abandoned it."  (*Id.* at p. 584.)  Because no party is alleged to have waived a contractual right, *Quach* does not govern our review.

15

appear before the arbitrator. Nor is there any suggestion they objected to being characterized as "counter-respondents" in every report and order issued by the arbitrator.

Notably, Wolf and Tahhan filed both a joint opposition to Scheinker's motion for summary adjudication and an "Opposition to Proposed Judgment." Although their failure to participate in discovery was the key issue affecting their liability, neither filing argued that they had not agreed to participate in the proceedings, or that they had been confused about their role at any point.

While Wolf and Tahhan seek to present a different version of events in their appellate briefing, they do not cite any evidence to support such a revisionist narrative. "We are not required to search the record to ascertain whether it contains support for [unsupported] contentions." (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545; see Cal. Rules of Court, rule 8.204(a)(1)(C) [parties must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"].)

Wolf and Tahhan do cite a declaration from Jamie Wrage of Stream Kim Hicks Wrage & Alfaro, PC, an attorney who represented Green America in the arbitration. Wrage asserts her firm "was retained by Green America, Inc. in early 2022 to represent it in an arbitration with Michael Scheinker," and says the firm "substituted out soon after the cross complaint [against Wolf and Tahhan] was sent to JAMS." Wrage was no longer representing Green America by the time Wolf and Tahhan first appeared in the arbitration, on May 6, 2022. Wrage's knowledge of events before Wolf and Tahhan were even named parties to the arbitration is not relevant to whether they consented to be parties through their participation.

16

Wolf and Tahhan cite *Southern Cal. Pipe Trades Dist. Council No. 16 v. Merritt* (1981) 126 Cal.App.3d 530, for the proposition "that naming a person in a Petition to Confirm Arbitration Award is not the proper vehicle to attempt to enforce the arbitration award against the person if the person was not properly before the arbitrator." In *Merritt,* an individual alleged to be the alter ego of a corporation successfully opposed a petition to confirm on the grounds he was not "a party to the arbitration" against the corporation and did not have "notice that an award against him personally was being sought." (*Id.* at p. 539.) Although he received some correspondence from the arbitrator, there was "nothing to indicate that the notices were sent to [him] other than as a person authorized to accept service or notice on behalf of the corporation," or to "show that [he] had any notice or reason to appear and defend personally." (*Ibid.*) In addition, the arbitration award was entered solely against the corporation. (*Id.* at p. 533.) Here, the record establishes that Wolf and Tahhan were named as parties in arbitral filings, actually appeared and participated in the proceedings as named parties, and were named in the final award. *Merritt* does not support their position.

At oral argument, counsel for Wolf and Tahhan argued they only participated in the arbitration as "officers and directors" of Green America and not as parties. This belated contention is inconsistent with evidence that they were named in their individual capacity in the counterdemand, were identified as "[c]ounter-respondents" in all of the arbitrator's reports and orders, and made substantive arguments concerning their individual liability.

Counsel also raised the concern that requiring a party to object to arbitration places an unfair burden on individuals who did not expressly agree to arbitrate their dispute. As a legal matter, numerous courts have found that the failure to object is an important factor in assessing whether a

17

party has consented to arbitration through participation. (See *Moncharsh*, *supra*, 3 Cal.4th at p. 31 [a party must raise the argument that an arbitration agreement is illegal "prior to participating in the arbitration process"]; *Douglass*, *supra*, 20 Cal.App.5th at p. 387–388 [collecting cases].) And, as a factual matter, we see no evidence Wolf and Tahhan were prevented from or hindered in stating an objection. Given the extent and duration of their participation, we see no unfairness in considering their undisputed failure to object.

For his part, Jones failed to argue in his briefing that he did not participate in the arbitration, instead claiming that issue preclusion bars O'Leary "from claiming that [he] agreed to participate in the arbitration."[8] At oral argument, counsel for Jones suggested he was prevented from filing a "substantive motion" or "substantive briefing," apparently alluding to a ruling by the arbitrator that he could not be heard with respect to the evidentiary sanctions against Green America, Wolf, and Tahhan. The record is nonetheless clear that Jones voluntarily participated in the arbitral proceedings and submitted other substantive filings, including an opposition to Scheinker's motion for summary disposition, and his own claims against third parties.

In sum, the evidence in the record indicates that the defendants meaningfully participated in the arbitration on their own behalf, often represented by counsel, over an extended period of time without objection. Defendants point to no evidence to the contrary. Accordingly, we conclude that defendants were parties to the arbitration.

---

8    As we shall explain in the following section, we do not find issue preclusion applies in the circumstances of this case.

18

**B.** *Preclusive Effect of the First Court's Judgment*

Generally, final judgments, even if they are erroneous, have a preclusive effect and may conclusively resolve specific issues or entire claims that were or could have been litigated between the parties. (See e.g., *DKN, supra*, 61 Cal.4th at pp. 814–815.) But even where the technical elements of issue or claim preclusion are otherwise satisfied, courts should decline to apply these equitable doctrines where doing so would be inconsistent with their core purposes. (See, e.g., *People v. Barragan* (2004) 32 Cal.4th 236, 256 (*Barragan*) ["Whether res judicata applies in a given context is not simply a matter of satisfying the doctrine's technical requirements"]; *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342–343 (*Lucido*) ["Even assuming all the threshold requirements are satisfied, however, our analysis is not at an end. We have repeatedly looked to the public policies underlying the doctrine before concluding that collateral estoppel should be applied in a particular setting"].) The public policies underlying claim preclusion include ensuring finality and preventing vexatious litigation. (See *Panos v. Great Western Packing Co.* (1943) 21 Cal.2d 636, 637.) "The public policies underlying [issue preclusion] are preserving the integrity of the judicial system, promoting judicial economy, preventing inconsistent judgments, and protecting litigants from vexatious litigation." (*F.E.V. v. City of Anaheim* (2017) 15 Cal.App.5th 462, 475 (*F.E.V.*).) In our view, applying preclusion here would be inconsistent with—if not undermine—several core policies behind these doctrines.[9]

Defendants argue that preclusion would advance the parties' and the courts' interest in finality by preventing O'Leary from relitigating the

---

[9] We requested and received supplemental briefing from the parties on this issue, which was not addressed by the trial court.

enforceability of the award. However, giving preclusive effect to the first court's order would not end the dispute. As observed by the superior court, barring O'Leary from confirming the award would not prevent her from pursuing her underlying claims in court.

In fact, applying preclusion would potentially worsen the parties' current quagmire because, "[f]or purposes of res judicata, even an unconfirmed arbitral award is the equivalent [of] a final judgment." (*Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 186.) As explained in the next section, defendants have not filed a petition to vacate the award and now appear to be time-barred from doing so. Applying preclusive effect to the first court's judgment would thus leave the parties, and future courts, to contend with a zombie arbitration judgment as well as a difficult-to-understand jurisdictional ruling, substantially increasing the risk of inconsistent judgments.

In addition, in the ordinary case, preclusion serves to ensure finality of a matter that has been litigated to a final judgment. (Cf. *People v. DeLouize* (2004) 32 Cal.4th 1223, 1232 ["The concept of finality 'rests upon the sound policy of limiting litigation by preventing a party who has had one fair adversary hearing on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination' "].) Here, giving preclusive effect to the first court's order has the effect of unwinding a lengthy arbitration proceeding in which, we have found, the defendants voluntarily participated. To the extent the purpose of preclusion is to protect a final merits judgment, that purpose would be inverted by applying the doctrine here. (*See Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 33 [noting the "strong public policy in favor of . . . according finality to arbitration awards"].)

Moreover, applying preclusion is inconsistent with public policy because the court's orders appear to have encouraged O'Leary to dismiss the appeal of the first order, thus ensuring it became a final judgment potentially entitled to preclusive effect. The first court's order seems to rest on the premise that defendants could not be made parties to the court action by means of a petition to confirm the award. This is incorrect. After a petition to compel arbitration has been initiated (see § 1281.2), "the court in which such petition was filed retains jurisdiction to determine any subsequent petition involving the same agreement to arbitrate and the same controversy, and any such subsequent petition shall be filed in the same proceeding." (§ 1292.6.) A petition to confirm *must* "name as respondents all parties to the arbitration and may name as respondents any other persons bound by the arbitration award." (§ 1285.) These statutes thus contemplate that parties may be added to a judicial action through a petition to confirm and not only through prearbitration pleadings.

The court's order further suggests that, because they were not parties to the court action before the arbitration was commenced, the exclusive basis for exercising personal jurisdiction over defendants was section 1293. This is also incorrect. Section 1293 merely provides that a party who has contractually agreed to arbitration in California has also thereby consented to personal jurisdiction in the courts of California. (§ 1293.) It does not provide the exclusive grounds for the exercise of personal jurisdiction. (See *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444 ["California's long-arm statute authorizes California courts to exercise jurisdiction on any basis not inconsistent with the Constitution of the United States or the Constitution of California," citing Code Civ. Proc., § 410.10].)

On their own, these conclusions were likely to lead to confusion, conflating unrelated issues of personal jurisdiction and party joinder. Compounding that uncertainty, the court's postjudgment order states that "the Court did not rule on whether the arbitration award is enforceable against Jones." Together, the court's orders suggested that there was a jurisdictional defect due to the procedural posture in the first action because defendants were not originally parties. It is therefore not surprising that O'Leary believed filing a second action could "cure[] the perceived jurisdictional defect," as she argues in her briefing. For this reason, we believe giving preclusive effect to the first judgment would risk eroding public confidence in the judicial system. (See *F.E.V., supra*, 15 Cal.App.5th at p. 476 [declining to give preclusive effect to a judgment where doing so would not promote "[p]ublic confidence in the wisdom and integrity of judicial decisions"].)

Finally, while O'Leary could have challenged the first court's order by pursuing her appeal, her mistake in dismissing that appeal is understandable in light of the court's rulings. As it seems to have been an effort to streamline the litigation, we do not find the duplicative litigation to be vexatious. (See *Lucido, supra*, 51 Cal.3d at p. 351 ["The essence of vexatiousness . . . is not mere repetition. Rather, it is harassment through baseless or unjustified litigation."].)

Defendants argue that this case is distinguishable from other cases in which courts have declined to apply preclusion on public policy grounds, including *F.E.V.* and *Barragan*. We agree that these cases are not factually or procedurally similar, but we are neither surprised nor troubled by this. It is, and should be, rare that a case will meet the technical criteria for claim or issue preclusion, but applying those doctrines would nonetheless not serve

22

the public policy interests behind them.  We would thus expect the circumstances of those cases to be unique, as are the circumstances here.

In sum, we conclude that applying preclusion to the rather odd circumstances presented by this case would undermine interests of finality, judicial economy, and public confidence in the judicial system, which are core policies the preclusion doctrines are intended to advance.  Accordingly, we find it would be inappropriate to apply the doctrines of claim and issue preclusion.

## C.   *Scope of Judicial Review of the Award*

O'Leary argues that the trial court did not have the authority to rely on general considerations of equity or due process to deny the petition to confirm.  She contends that, because defendants have not shown they timely requested vacatur of the award, the court was required to either confirm the award or dismiss the petition on the grounds that defendants were not parties to the arbitration and were not bound by the award.

Until it has been either confirmed or vacated by a court, an arbitration award "has the same force and effect as a contract in writing between the parties to the arbitration."  (§ 1287.6.)  A party may seek to vacate an award either by filing a petition to vacate or requesting vacatur in response to a petition to confirm the award.  (§ 1288.2.)  Such petition must be filed and served "not later than 100 days after the date of the service of a signed copy of the award on the petitioner."  (§ 1288.)  In the event a request to vacate is made in response to the petition to confirm, the response must be timely under the 100-day deadline *and* it also must be filed within 10 days after service of the petition to confirm.  (*Law Finance Group*, *LLC v. Key* (2023) 14 Cal.5th 932, 946 (*Key*); § 1288.2; § 1290.6.)  "Failure to file a timely

response prevents a party from vacating an award . . . ." (*United Firefighters of Los Angeles v. City of Los Angeles* (1991) 231 Cal.App.3d 1576, 1581.)

Wolf and Tahhan dispute this interpretation of the law, arguing that the 100-day time limit only applies to stand-alone petitions to vacate. On this point, the statute is specific: "A response requesting that an award be vacated or that an award be corrected shall be served and filed not later than 100 days after the date of service of a signed copy of the award . . . ." (§ 1288.2.) Wolf and Tahhan also suggest that this reading conflicts with section 1286, which provides, "If a petition or response under this chapter is duly served and filed, the court shall confirm the award as made, whether rendered in this state or another state, unless in accordance with this chapter it corrects the award and confirms it as corrected, vacates the award or dismisses the proceeding." We see nothing in this provision that conflicts with the time limits set out in section 1288.2, especially as it references "duly served and filed" responses.

Wolf and Tahhan further suggest this interpretation is unfair, as "a Petitioner need only to wait 100 days and file a Petition to which the other party could not even appear and defend." We are bound by the recent ruling of the Supreme Court: "Under the plain terms of sections 1288 and 1288.2, [a party] ha[s] 100 days from the service of the final award to request that the arbitration award be vacated—whether . . . via a standalone petition to vacate or via a response to [a] petition to confirm the award." (*Key, supra*, 14 Cal.5th at p. 946.) As indicated by this language, a party need not wait for a petition to confirm and is free to file his own petition to vacate. Wolf and Tahhan's concerns about unfairness are thus ill-founded.

For his part, Jones contends that *Bayscene* "recognizes the authority of trial courts to deny confirmation of arbitration awards where due process has

24

been violated—particularly under circumstances in which respondents did not consent to arbitration." *Bayscene* does not discuss whether the parties opposing the petition to confirm timely requested vacatur, only stating that the trial court "dismissed" the petition. (*Bayscene*, *supra*, 15 Cal.App.4th at p. 124.) " ' "[C]ases are not authority for propositions not considered." ' " (*B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 11.) In any event, *Bayscene* addressed circumstances in which a city passed an unconstitutional ordinance compelling arbitration of an ongoing case and the city attorney threatened respondents with criminal prosecution if they did not submit to arbitration. (*Bayscene*, at pp. 122–126, 135.) In addition, the respondents "objected to the arbitration proceedings repeatedly, continually raising the constitutional challenge both before and during proceedings." (*Id.* at 129.) The circumstances of this case bear no resemblance to those in *Bayscene*.

In short, defendants were required to file timely petitions or requests to vacate the award in order to obtain such relief. They do not contend that they did so. Jones barely addresses this issue except to say, "[O'Leary's] claim that [defendants'] 'time to cry foul' has long passed due to their alleged failure to petition to vacate the award is entirely misplaced." Wolf and Tahhan similarly do not claim that they timely asserted a request to vacate. Accordingly, defendants have forfeited such arguments. (See, e.g., *Asaro v. Maniscalco* (2024) 103 Cal.App.5th 717, 728, fn. 4 (*Asaro*).)[10] As a result,

---

10      While the first court's order indicates that the defendants requested to vacate the award, it does not note whether the requests were timely made, under the deadlines discussed above. Defendants do not argue that a timely request in the first matter would preserve their ability to seek vacatur in this second matter, thus forfeiting any such argument. (See *Asaro, supra*, 103 Cal.App.5th at p. 728, fn. 4.)

we cannot consider defendants' various arguments regarding the fairness of the arbitral proceedings.

Rather, our review is limited to determining whether dismissal is appropriate because defendants "[were] not bound by the arbitration award and [were] not a party to the arbitration." (§ 1287.2.) As we have already concluded, defendants were parties to the arbitration. Accordingly, there are no grounds to deny the petition to confirm the award.[11]

## DISPOSITION

The judgment is reversed. The matter is remanded with directions to the trial court to confirm the arbitration award and enter judgment in favor of O'Leary, who is entitled to recover her costs on appeal.


DATO, Acting P. J.

WE CONCUR:


CASTILLO, J.


RUBIN, J.

---

[11] The parties filed requests for judicial notice on September 24, 2025, October 24, 2025, and November 13, 2025. As noted above (*ante*, at fn. 2), we take judicial notice of the complaint filed by Green America. Otherwise, these requests include information that is either already part of the record or beyond the scope of our limited review. They are thus denied as unnecessary.